Patricia Ann ASHRAF, Petitioner-Respondent,

v.

Hebatollah Seid ASHRAF, Respondent-Appellant.†

Court of Appeals

*No. 85–1556. Argued August 7, 1986.—Decided October 15, 1986.*

(Also reported in 397 N.W.2d 128.)

†Petition to review denied.

■

For the respondent-appellant, there were briefs by *Franklyn M. Gimbel* and *Marna M. Tess-Mattner* of *Gimbel, Gimbel & Reilly*, Milwaukee. Oral argument by *Franklyn M. Gimbel.*

For the petitioner-respondent, there were briefs and oral argument by *Paul J. Gossens* of *Paul J. Gossens, S.C.*, Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   The major issue in this divorce action is whether the trial court adequately considered the tax and other financial ramifications of the property division in which the husband was awarded nonliquid assets but was ordered to pay the wife a large cash sum almost immediately. Hebatollah Seid Ashraf (Seid) claims the trial court failed to adjust the property division to offset the costs of liquidating assets to pay Patricia Ann Ashraf (Patricia). Because we hold that the trial court demonstrated a sufficient consideration of the tax and economic implications of its property division award, we affirm as to this issue. However, we reverse and remand for the trial court to further illuminate its reasoning in valuing certain assets and in requiring Seid to contribute $10,894 toward Patricia's attorney fees.

The parties were married on July 10, 1963 in Chicago, Illinois. Seid, who had already graduated from an Iranian medical school, was a student at the time and obtained his license to practice medicine in the United States in 1968. Patricia had a ninth grade education. She later obtained a cosmetologist's license but was not

employed outside the home during the marriage. A daughter and a son were born of the marriage, and Seid adopted Patricia's older daughter from her previous marriage. Only the son is still a minor.

At the time of the divorce, in 1984, Seid was a pediatrician and owned his own medical building and practice in Wauwatosa, Wisconsin. He was fifty years old, in excellent health, and his income had averaged $142,459 per year for the four preceding years. Patricia, after leaving the marital residence in 1981, had worked for a time as a hairdresser, earning an average of $45 weekly. Unemployed at the time of trial, she was taking classes at a junior college in basic grammar, basic reading and oil painting. She was thirty-eight and in good health, but had had surgery and ongoing dental problems.

The parties stipulated to joint custody of their minor son, with physical placement to be with Seid at the family residence in Brookfield.

Both parties asked the trial court to accomplish the property division by awarding all the major assets to Seid, who would then pay Patricia the value of half the marital estate in some combination of an initial lump sum payment and periodic payments over 121 months.

The trial court valued the marital estate at $612,176.10 and awarded all assets, excepting personalty in Patricia's possession, to Seid. Patricia was awarded $306,088.05 to be paid by Seid as follows:

1. $5,000 cash already advanced;

2. $50,000 cash no later than October 4, 1984;

3. $91,088.05 cash no later than January 4, 1985;

4. $160,000 in periodic payments for 121 months, bearing interest at 12%, commencing October 1, 1984.

Patricia was also awarded maintenance of $1,666.66 per month for five years, followed by $833.33 per month for the next five years; at the end of ten years, maintenance was to be held open.[1]

Property division in divorce judgments rests within the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. *Haugan v. Haugan*, 117 Wis.2d 200, 215, 343 N.W.2d 796, 804 (1984). An abuse of discretion occurs when the trial court fails to consider proper factors, makes a mistake with respect to the facts upon which the division is made or makes an award which is, under the circumstances, either excessive or inadequate. *Thorpe v. Thorpe*, 108 Wis.2d 189, 195, 321 N.W.2d 237, 240 (1982). The exercise of discretion requires a reason-

---

[1] The divorce was granted on March 5, 1984. The trial court filed its original memorandum decision on September 4, 1984, its amended memorandum decision on September 24, 1984, and its Findings of Fact, Conclusions of Law and Judgment on October 25, 1984. Seid filed a motion for relief from judgment on November 30, 1984; on the same date the trial court entered an order vacating the October 25, 1984 judgment. The court orally reinstated the judgment, with one modification, on December 19, 1984; that order was entered on February 7, 1985, but contained certain errors. In the interim, Seid appealed; the appeal was dismissed for lack of jurisdiction because the notice of appeal was filed before the order reinstating the judgment. On July 24, 1985, the trial court signed and entered an order vacating the order of February 7, modifying the original judgment, denying in all other respects the motion for relief from judgment, and reinstating the judgment effective December 19, 1984. Seid filed a timely notice of appeal.

ing process dependent on facts in, or reasonable inferences from, the record and a conclusion based on proper legal standards. *Arneson v. Arneson,* 120 Wis.2d 236, 254, 355 N.W.2d 16, 24 (Ct. App. 1984).

Seid contends that the trial court abused its discretion by failing to consider the economic impact of the property division upon Seid's share and by failing to explain what, if any, consideration it gave to the tax ramifications of the property division.

The result, Seid claims, is that the total amount awarded to Patricia is too high. Seid's reasoning is as follows: Seid was ordered to pay Patricia $141,088.05 in two installments within approximately three months of the trial court's amended decision. While Seid was awarded assets worth over $600,000, the only liquid assets were his securities, valued at $37,320.76, plus $10,000 from his Prairie Associates partnership. Therefore, Seid must still raise a large sum by selling or mortgaging part of the estate, most likely the medical building.

Significant costs to Seid will result, he argues, from either means of raising the money. If he sells the medical building, he will incur long-term capital gains tax liability of approximately $56,000, according to his accountant's testimony. If he obtains a mortgage, although his interest payments will be tax-deductible, he will have to repay the principal in after-tax dollars; given his 55% tax bracket, approximately two dollars of earnings will be required to repay every dollar of principal.

Thus, the argument continues, whether he sells or mortgages there is a cost to Seid of obtaining the cash to pay Patricia. The result is that while Patricia receives her share of the estate undiminished, Seid's share is

significantly reduced by the cost of accomplishing the property division—that is, the cost of converting non-liquid assets into immediately divisible form.

Seid argues that since a fifty-fifty property division was the intended result, the costs of achieving the property division ordered by the court should be borne by both parties. Therefore, he contends, the trial court should have decreased the amount awarded to Patricia so that she shared the cost of the property division.

This court acknowledges the reasonableness of Seid's argument that the costs of achieving property division should be shared. It is an aspect that trial courts should consider. At the same time, we determine that this trial court did recognize what it termed the "liquidity pinch" and requested special briefing on the issue. In its amended memorandum decision, the court expressly addressed the tax impact of selling the medical building and explained that this tax liability would not arise if Seid instead mortgaged the building and residence to raise the money to pay Patricia. The court also illustrated the first year's tax impact of the property division and maintenance award on the parties in a cash flow chart appended to its amended memorandum decision.[2]

---

[2] Seid argues that the cash flow chart is flawed because it fails to take into account any repayment of principal on the refinanced property. We are not convinced that the omission is fatal. We take judicial notice that in the early years of repayment of such loans the payments are attributable entirely, or almost entirely, to interest, not principal. Thus, large payments attributable to repayment of principal will most likely not occur until a time when Seid's maintenance payments have been reduced or eliminated, leaving him greater disposible income with which to make the nondeductible repayments of principal.

The trial court did not expressly address Seid's argument that his share is diminished by having to repay the principal in after-tax dollars. However, neither did the court expressly acknowledge, except in the cash flow chart, the fact that the periodic payment portion of the award, constituting over half of the total award, operates to Seid's benefit and to Patricia's detriment for federal income tax purposes. *See* 26 U.S.C. secs. 71 and 215 (1982). "Periodic payments" received by one party to a divorce, which constitute a discharge of a legal obligation which the other party has by virtue of the divorce decree, are to be included in the recipient's gross income and are deductible by the payor; installment payments discharging the principal sum stated in the decree constitute periodic payments if they are to extend over a period ending more than ten years after the date of the decree. 26 U.S.C. sec. 71(c)(2); *Seiler v. Seiler*, 48 Wis.2d 400, 404, 180 N.W.2d 627, 629 (1970).[3]

A trial court is not required to adopt a method of property division which produces the least amount of tax for either party. *Jost v. Jost*, 89 Wis.2d 533, 542, 279 N.W.2d 202, 207 (1979). The rule is not that tax considerations are controlling, but that the trial court should be aware of the tax consequences of its rulings and take such consequences of any proposed division into consid-

---

[3] The 1984 amendments to 26 U.S.C. secs. 71 and 215 need not be addressed here, as they apply with respect to divorce or separation instruments executed after December 31, 1984, or to instruments previously executed but modified on or after January 1, 1985 if the modification expressly provides that the 1984 amendments shall apply to such modification. *See* Act of July 18, 1984, Pub. L. 98–369, sec. 422, 98 Stat. 795 and 797 (1984).

eration in making its ruling. *Seiler* at 405, 180 N.W.2d at 630. How the arrangement works out in reality after taxes is a test of fairness. *Jost* at 542, 279 N.W.2d at 207.

In *Seiler*, the trial court awarded a $50,000 property division to the appellant wife in the form of $25,000 to be paid within ninety days with the remainder to be paid in annual installments ending more than ten years after the date of judgment. The installment payments thus constituted periodic payments taxable to the recipient under 26 U.S.C. sec. 71, a result she argued on appeal that the trial court had not considered. The supreme court held that the trial court's action in deliberately structuring the payments over more than ten years appeared to be a conscious attempt to make them periodic payments under sec. 71; thus, the supreme court was satisfied that the trial court had the tax consequences to both parties in mind. *Seiler* at 406–07, 180 N.W.2d at 630–31.

*Seiler* represents the flip side of the coin before us in this case and leads us to conclude that the trial court here demonstrated ample consideration of the tax and other economic implications of its property division award. The trial court's division of the award between the upfront payment, which involves some cost to Seid but no tax consequence to Patricia, and the larger amount in periodic payments, which involves a cost to Patricia but a tax benefit to Seid, demonstrates a reasonable consideration and balancing of those consequences. Therefore, we affirm this aspect of the property division.

The next issue is whether the trial court erred in ignoring undisputed expert testimony that the future

tax impact on Seid's IRA and Keogh plan was likely to be 25% and substituting its own figure of 15%, citing only "policy and case law." We hold that it did.[4]

A trial court is not required to adopt uncontradicted testimony if it is inherently improbable; however, the court cannot disregard uncontradicted testimony as to the existence of some fact or the happening of some event in the absence of something in the case which discredits the testimony or renders it against reasonable probabilities. *Holbrook v. Holbrook,* 103 Wis.2d 327, 335, 309 N.W.2d 343, 347 (Ct. App. 1981).

The trial court here did not say that it found Seid's expert's testimony incredible or against reasonable probabilities, nor did it otherwise adequately explain its decision to reject the 25% figure. "Policy and case law" is not a sufficient explanation.

The case law alluded to, but not identified in the trial court's decision, is *Selchert v. Selchert,* 90 Wis.2d 1, 280 N.W.2d 293 (Ct. App. 1979). Waukesha county circuit judges have apparently adopted 15% as the amount by which to discount pension plans for future tax consequences, based on *Selchert*'s statement that "[i]f each payment would be taxed when received at approximately 10–20%, which is reasonable speculation, the

---

[4] The testimony of a likely 25% reduction for taxes also applied to the proceeds from the Prairie Associates partnership. The trial court originally declined to discount the Prairie Associates proceeds by any amount; however, upon receiving evidence at the December 19, 1984 motion hearing of an actual tax impact of $827, the trial court modified the judgment, subtracting half of that amount from the moneys due to Patricia. Seid's claim that the trial court should have accepted the original testimony as to Prairie Associates is therefore moot.

present value of the pension would be considerably [reduced]." *Id.* at 9, 280 N.W.2d at 297.

However, while a 10-20% tax rate may have been "reasonable speculation" in *Selchert,* in the present case there was affirmative expert testimony that 25% was a conservative prediction of the rate of taxation on Seid's IRA and Keogh plans. Given such uncontradicted testimony, the trial court must either accept it or explain why it found the testimony improbable or the witness discredited. We therefore reverse and remand for the trial court to further illuminate its reasoning in arriving at the present values of the IRA and Keogh plans or to adjust the values to comport with the testimony.

Upon remand, we also direct the trial court to make further findings relevant to Seid's contribution to Patricia's attorney fees. Before making a discretionary award of attorney fees in a divorce, pursuant to sec. 767.262, Stats., the trial court must making findings of the need of the spouse seeking contribution, the ability to pay of the spouse ordered to pay, and the reasonableness of the total fees. *Kastelic v. Kastelic,* 119 Wis.2d 280, 290, 350 N.W.2d 714, 719 (Ct. App. 1984).

All the trial court said in the present case was that since Seid had been able to purchase a $26,000 automobile during the pendency of the action, Patricia's request for contribution appeared justified. The court failed to address Patricia's need for contribution and the reasonableness of the fees. On remand, the trial court is to reconsider the award of attorney fees and make appropriate findings to support any award it may make.

No costs to either party.

346

*By the Court.*—Judgment and order affirmed in part; reversed in part, and cause remanded with directions.