IN RE the MARRIAGE OF Barbara A. WALLEN,
Petitioner-Respondent,

v.

Kempster J. WALLEN, Respondent-Appellant.

Court of Appeals

*No. 86–1285. Submitted on briefs February 25, 1987.—Decided
April 9, 1987.*

(Also reported in 407 N.W.2d 293.)

217

218

219

For the respondent-appellant the cause was submitted on the brief of *Donald E. Mayew* of *Phillips, Richards & Mayew, S.C.* of Kenosha.

For the petitioner-respondent the cause was submitted on the brief of *Thomas W. Anderson* of *Anderson, Sumpter & Higgins-Frost, S.C.* of Kenosha.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. The major issue on this appeal from a divorce judgment is whether sufficient facts supported the trial court's decision to base Kempster J. Wallen's child support obligation on his potential earning capacity rather than his actual earnings at the time of the divorce. We reverse this aspect of the judgment, concluding that the evidence was insufficient to support the necessary finding that Kempster was failing to exercise his capacity to earn for the purpose of reducing his ability to pay support. Since this conclusion also bears upon the question of attorney fees contribution, we also reverse this portion of the judgment. Otherwise, the judgment is affirmed.

Kempster and Barbara A. Wallen were married in 1971 and at the time of the divorce, in September 1985, they had two children, aged seven and three.

220

Custody was awarded to Barbara. Under the terms of the family court commissioner's temporary order, Kempster was ordered to pay $450 biweekly in child support. The parties then agreed on an arrangement whereby Kempster collected the rent on their upstairs flat, paid the $450 monthly mortgage payment on the building and further paid $450 per month directly to Barbara. This arrangement, confirmed by an amended temporary order, was in effect as of August 21, 1984. Kempster remained fully current on his obligations until May 1985.

Kempster had for several years been employed fulltime at American Motors Corporation (AMC) in Kenosha. His weekly gross income at AMC, where he was a production supervisor in the metal shop, had been $530.75. In addition to his employment at AMC, Kempster had devoted twenty to thirty hours a week as an independent insurance agent with the Villnow Agency, earning an additional average of perhaps $90 per week on a commission basis.

On May 3, 1985, Kempster was laid off from his employment at AMC because the second shift was discontinued. While his name was placed on a recall list, no apparent possibility of recall exists. After being laid off, Kempster devoted approximately seven hours per day to developing his insurance business, but testified that the insurance industry was suffering financially. In addition, two days after the layoff, he took a minimum wage job at the Great America theme park in Gurnee, Illinois. At the time of trial, the Great America job was weekends only and the park was due to close for the season the following month. Kempster had applied for employment at several Kenosha-area factories, without success. His combined gross income from his insurance commissions and the Great Ameri-

ca job was approximately $103 per week at the time of trial; his net income was $77.29.

The trial court issued a temporary order requiring Kempster to pay his entire Great America earnings plus $25 per week in child support; when the Great America job ended, his obligation was automatically to become $125 per week. The court's final judgment set child support at $95 per child per week, or $190 per week total. This obligation significantly exceeded Kempster's weekly income as of the time of trial.

The trial court justified its child support award by finding that Kempster had purposefully reduced his income to strategically position himself for support purposes. The court's decision stated:

> The Respondent is in good health and able bodied and has previously been able to work at factory jobs earning at least $14.00 per hour. Even though he does not have a high school diploma, the Court was most impressed by his intellectual ability as demonstrated in his testimony. He is an accomplished salesman and the Court believes that if he had chosen to apply himself in any sales job, as previously demonstrated by his success in the insurance field, he could be an extremely successful salesperson.
>
> . . . .
>
> Further, the Court ... believes that he has taken a very low paying job at Great America when he could have sought and obtained employment that was higher paying employment. Also, the companies at which he applied for work are known in the community to not be hiring employees. Also, such list is extremely limited especially if one considers that the Respondent is willing to travel for a minimum salaried job as far as Gurnee,

Illinois where the Great America amusement park is located.

It is apparent from the court's additional comments at the end of trial that the court simply did not believe that Kempster could not find higher paying work and believed that his accepting the Great America job was a "farce" and a "deliberate attempt on this Court and on his children not to support them."

An award of child support is within the discretion of the trial court and will not be overturned unless the trial court abuses its discretion. *Edwards v. Edwards,* 97 Wis. 2d 111, 116, 293 N.W.2d 160, 163 (1980). The exercise of discretion requires a reasoning process dependent on facts in, or reasonable inferences from, the record and a conclusion based on proper legal standards. *Ashraf v. Ashraf,* 134 Wis. 2d 336, 340–41, 397 N.W.2d 128, 130 (Ct. App. 1986). The level of child support is established according to the needs of the custodial parent and children and the ability of the noncustodial parent to pay. *Edwards,* 97 Wis. 2d at 116, 293 N.W.2d at 163. Ability to pay is usually determined by the parent's income, assets, debts, age and health, *based on the circumstances existing at the time of the divorce. Id.*

The supreme court has held that a noncustodial parent should be allowed a fair choice of a means of livelihood and the chance to pursue what he or she honestly feels are the best opportunities even though the financial returns may, for the present, be less; this rule, of course, is subject to reasonableness commensurate with the parent's obligations to his or her children and former spouse. *Balaam v. Balaam,* 52

Wis. 2d 20, 28, 187 N.W.2d 867, 871 (1971). Thus, to base a child support award on capacity to earn rather than actual earnings, there should be a finding *based on evidence* that the parent was failing to exercise his or her capacity to earn because of a disregard of his or her support obligations. *Id.* at 28, 187 N.W.2d at 872. A trial court's consideration of earning capacity rather than actual earnings is improper absent a finding that the parent was not "fairly or diligently working at the occupation which he [was] best suited for, [or] that he [was] willfully accepting employment and resultant lower compensation for the purpose of reducing his ability to pay ... support money." *Edwards,* 97 Wis. 2d at 119, 293 N.W.2d at 165 (quoting *Balaam,* 52 Wis. 2d at 28–29, 187 N.W.2d at 872).

The issue thus becomes whether the trial court's finding that Kempster had purposefully reduced his income to avoid or abate his support obligation—i.e., that he was shirking—was clearly erroneous. *See* sec. 805.17(2), Stats. To reverse, the evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643–44, 340 N.W.2d 575, 577 (Ct. App. 1983). In addition, the trial judge is the ultimate arbiter of witness credibility, and where more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Id.* at 644, 340 N.W.2d at 577.

With all due deference to the trial court's superior opportunity to view the parties and judge credibility, we must conclude that the record in this case does not support a finding of shirking.

The following facts relevant to such a finding were undisputed. Kempster made support payments under the temporary order from August 1984 until May 1985, when he was laid off at AMC. He was laid off involuntarily, through no fault of his own. Because of his insurance sales work and the Great America job, he was deemed ineligible for unemployment compensation, a decision he has appealed. After the layoff, he increased the time he spent on his insurance business from the twenty to thirty hours per week he had spent while employed fulltime at AMC to six and one-half to seven hours per day. In addition, he took the Great America job two days after the layoff, testifying that he wanted to be generating income while looking for new work. He testified that he applied for factory work at several Kenosha plants but was not able to obtain other employment. He did not wish to seek employment with a new insurance agency; he had several years earlier left a "captive" insurance agency after negative experiences with that type of insurance work and believed that a switch to a new independent agency would only cost him clients.

In the face of such facts, and in light of the standard set out in *Edwards* and *Balaam,* we believe that the trial judge needed more than simple disbelief in Kempster's motivations before making an award based on potential rather than actual earnings. The evidence here would not support a finding that Kempster was responsible for losing his well-paid job at AMC. Nor was there evidence that Kempster failed to seek new employment, decreased his efforts in his insurance business or refused any job offer.

There is no set list of factors which are decisive in a shirking determination. However, perhaps the most common factor accompanying such a finding is a

225

voluntary or self-inflicted change in financial circumstances. For example, in such cases, a parent has quit his or her employment, *see, e.g., Knutson v. Knutson,* 15 Wis. 2d 115, 117, 111 N.W.2d 905, 907 (1961), and *Tozer v. Tozer,* 121 Wis. 2d 187, 190, 358 N.W.2d 537, 539 (Ct. App. 1984); has rejected job offers, *see, e.g., Klinge v. Klinge,* 554 S.W.2d 474, 476–77 (Mo. Ct. App. 1977); has chosen early retirement, *see, e.g., Ellis v. Ellis,* 262 N.W.2d 265, 268 (Iowa 1978); has been fired or demoted for misconduct, *see, e.g., Baer v. Simon,* 334 So. 2d 796, 797–98 (La. Ct. App. 1976); or by some other means has brought about his or her reduced ability to pay support.

■ While a voluntary change in employment resulting in reduced earnings will not compel a finding that the parent is shirking, *see Balaam,* 52 Wis. 2d at 28, 187 N.W.2d at 871–72, absence of volition in the initial reduction of income is surely an important factor to be considered in a shirking determination. When a parent's change in financial circumstances is initially nonvolitional, there should be positive evidence of his or her bad faith in failing to recover financially unless the trial court can find that the parent's explanation or circumstances are inherently improbable or the parent's veracity is discredited. *See Ashraf,* 134 Wis. 2d at 345, 397 N.W.2d at 132.

■ Here, there was no evidence that Kempster's change in circumstances was voluntary. The trial court simply disagreed with the wisdom of accepting the Great America job and thought Kempster should pursue a sales career, look further afield for factory work or at least take a minimum wage job closer to home so as to have more time to devote to developing

his insurance clientele. The court could not believe that a man who had in recent years earned upwards of $30,000 could have a bona fide reason for accepting a parttime, temporary job at minimum wage while looking for more appropriate and higher paying employment. However, we cannot conclude that such a course of events is so inherently improbable that it can only be explained by bad faith on Kempster's part.

The trial court, from the bench, stated that it "could" take judicial notice that jobs paying more than $3.35 an hour were available in the community. We doubt that this state of affairs would be a proper subject of judicial notice, *see* sec. 902.01, Stats.; however, the trial court did not actually take judicial notice of the availability of suitable work in the community. No such evidence was offered, nor was there evidence that Kempster knew of such opportunities if they did exist.

To determine the true state of affairs regarding Kempster's employability, the trial court might properly have held the child support question open for a period of time and issued a seek-work order requiring Kempster to apply for employment through the county Job Services and local businesses. *See In re Marriage of Dennis,* 117 Wis. 2d 249, 344 N.W.2d 128 (1984). "Until the defendant and the judge know what other work and income is available, there is no way the judge can determine, except by suspicion, that the defendant can do no better ... ." *Id.* at 258, 344 N.W.2d at 132.

Certainly, Kempster is to be allowed a fair choice of employment. *See Balaam,* 52 Wis. 2d at 28, 187 N.W.2d at 871. However, use of a seek-work order here would have put the trial court in a much better position to determine, after a reasonable period,

whether Kempster was shirking his obligations by refusing, or failing to seek, suitable employment.

■

Because no such positive evidence of bad faith or other evidence discrediting Kempster or rendering his actions inherently improbable appears in the record, the trial court's finding that Kempster was shirking was clearly erroneous—that is, the evidence to the contrary constitutes the great weight and clear preponderance of the evidence.[1] *See Noll*, 115 Wis. 2d at 643–44, 340 N.W.2d at 577.

Because insufficient evidence supported the shirking determination, we reverse the portion of the judgment which establishes the child support award and remand for further proceedings to establish child support in accordance with the standards set forth in this opinion.

Because we reverse on this ground, we need not consider whether the trial court's determination of Kempster's earning capacity was erroneous.

Kempster also challenges the equitableness of the property division and the failure to award him interest on his share of the homestead while occupied by Barbara and the children. We affirm on these issues.

---

[1]The absence of bad faith on Kempster's part is also supported by his stance at trial that it would be appropriate for the initial child support award to be reconsidered at a later date. This appears to us a reasonable position for a parent who is presently suffering economic hardship but is attempting to reestablish himself or herself financially. Kempster did not represent to the court that he expected his current plight to continue indefinitely; he recognized that his obligation should increase when his ability to pay did the same. The trial court could well have concluded that the requested period of months was an overly generous period of time, but the court denied Kempster's good faith altogether.

Property division rests within the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. *Ashraf,* 134 Wis. 2d at 340, 397 N.W.2d at 130. An abuse of discretion occurs when the trial court fails to consider proper factors, makes a mistake with respect to the facts upon which the division is made or makes an award which is, under the circumstances, either excessive or inadequate. *Id.* Factors to be considered in property division are set out in sec. 767.255, Stats.

Kempster contends that the property division varied from the presumptive fifty-fifty split, and from the parties' stipulation, without sufficient explanation or consideration of the relevant factors. We consider that the trial court did make a reasoned property division after considering the relevant factors. The court in large part adopted the parties' stipulations regarding the use and eventual disposition of the family residence, the value of the furnishings and the division of the joint income tax refund.[2] It stated it was awarding Barbara most of the household furnishings since they should be used for the benefit of the minor children in her custody. Similarly, the court awarded the snowblower to Barbara, deeming it an appropriate tool for use at the family residence. These determinations were well within the trial court's proper exercise of discretion.

---

[2]Although the court ordered that the income tax refund be divided equally between the parties, it required that Kempster's share be applied to the arrearages as determined by the court.

As to interest on the use of the family residence, Kempster did not request such interest at the trial level and stipulated to Barbara's occupation of the house for five years without payment of interest. The matter has therefore been waived.

Finally, Kempster challenges the requirement that he contribute $1500 towards Barbara's attorney fees. This is, again, a discretionary award. Sec. 767.262, Stats.; *Ashraf,* 134 Wis. 2d at 346, 397 N.W.2d at 132. Before awarding attorney fees, the trial court must make findings of the need of the spouse seeking contribution, the ability to pay of the spouse ordered to pay and the reasonableness of the total fees. *Id.* at 346, 397 N.W.2d at 132–33.

Kempster claims that because the trial court ordered him to pay his share of the parties' joint income tax refund towards the mortgage arrearage, while Barbara received her share in full, and ordered him to pay certain other debts and interest payments, and because the parties' actual incomes at the time of the trial were about equal, the court erred in finding that Kempster had the ability to pay the contribution. Barbara contends that adequate analysis of Kempster's ability to make contribution was reflected in the court's discussion of his ability to pay child support. The court's actual finding as to attorney fees stated, "The Court finds and determines that there is a disparity in potential income between the parties and that [Barbara] will not in the near future have the potential to pay the substantial attorney's fees as are found to be reasonable in this matter."

We conclude that the court's decision fails to reflect a present ability to pay on Kempster's part and that if insufficient evidence of shirking exists to allow a child support award to be based on earning capacity, neither can an award of attorney fees be based on earning capacity rather than actual ability to pay. Therefore, we reverse this aspect of the judgment and direct that, like the child support award, any attorney fees contribution be based on Kempster's actual ability to pay unless, at the hearing on remand, the trial court makes a properly supported determination that earning capacity should be considered.

No costs to either party.

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded with directions.