IN the MATTER OF the MENTAL CONDITION
OF K.S.: K.S., Appellant,†

v.

WINNEBAGO COUNTY, Respondent.

Court of Appeals

*No. 88–1246. Submitted on briefs October 4, 1988.—Decided
November 16, 1988.*

(Also reported in 433 N.W.2d 291.)

† Petition to review denied. BABLITCH, J., took no part.

On behalf of the appellant, the cause was submitted on the briefs of *Leonard D. Kachinsky* of *Kachinsky Law Offices* of Neenah.

On behalf of the respondent, the cause was submitted on the brief of *Robert A. Anderson,* assistant district attorney of Oshkosh.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. K.S. appeals an order for civil commitment.[1] He argues that the trial court erred in ordering involuntary medication because he was not advised of the advantages and disadvantages of treatment or alternatives to medication. We conclude that the trial court's finding that K.S. had been told of the advantages and disadvantages is not clearly erroneous. We further conclude that information about

---

[1]This appeal is decided by three judges, pursuant to Rule 809.41(3), Stats.

alternatives was not necessary in this case because there was expert testimony that there were no medically acceptable alternatives for K.S. We therefore affirm.

This action was commenced by a petition for civil commitment and for involuntary medication during detention. The issues at the final hearing were limited to dangerousness and the need for involuntary medication. At the close, the trial court issued an order for commitment and for involuntary medication. Further facts regarding the testimony will be stated as necessary.

In *State ex rel. Jones v. Gerhardstein,* 141 Wis. 2d 710, 416 N.W.2d 883 (1987), the supreme court concluded that the statutory scheme relating to involuntary medication denied equal protection to involuntarily committed individuals. *Id.* at 735–37, 416 N.W.2d at 893–94. This constitutional infirmity is eliminated when the first five sentences of sec. 51.61(1)(g), Stats., are made applicable to involuntarily committed individuals. *Jones,* 141 Wis. 2d at 745, 416 N.W.2d at 897. The fifth sentence reads in part:

> An individual is not competent to refuse medication if because of mental illness ... the individual is incapable of expressing an understanding of the advantages and disadvantages of accepting treatment, and the alternatives to accepting the particular treatment offered, after the advantages, disadvantages and alternatives have been explained to the individual.

Sec. 51.61(1)(g).

This statute recognizes that before an individual is found incapable of *understanding* treatment information, that information must first be *provided* to the

individual. K.S. argues that there is no evidence that he was told of the advantages and disadvantages of and alternatives to taking the medication.

Whether K.S. was informed as required by sec. 51.61(1)(g), Stats., is an evidentiary matter. We will therefore affirm the trial court's determination unless clearly erroneous. Sec. 805.17(2), Stats. Further, we must accept reasonable inferences drawn from the evidence by the trial court. *Wallen v. Wallen,* 139 Wis. 2d 217, 224, 407 N.W.2d 293, 296 (Ct. App. 1987).

In its oral decision, the trial court stated that it would infer from the testimony that Dr. Wimal Yapa had a discussion with K.S. regarding the medication. The testimony of Dr. Yapa included the following statements:

> At the time I saw [K.S.], he denied any side effect .... [T]alking to him he also said that he was not having side effects except he didn't like medications.
>
> ....
>
> ... [He] did admit that in the past, while on medication, that he did not get into trouble, that he got along with people and he was not sure whether the medication helped; but as I pointed out to him, the medications may have controlled his symptoms and his appropriate behavior could be a result of the medication, but he was not willing to accept it at the time.

Although more specific testimony could (and perhaps should) have been elicited, we cannot say that the trial court's inference of a discussion is unreasonable or clearly erroneous. The testimony could allow the fact finder to infer that a general discussion of the

advantages and disadvantages of medication took place.

Whether the discussion included mention of alternatives to medication is another question. The record contains no reference to K.S. being told of alternatives, nor can such an inference be supported. On cross-examination, Dr. Yapa was asked about alternatives such as psychosocial treatment and milieu therapy. His response, in part, was:

> Those are not alternative treatments. Once the psychosis is under control, those are used to improve their level of functioning, also to prepare them for life in the community .... [B]ut to control the halllucinations [sic] and delusions, which are the major symptoms of [K.S.'s] illness, *patient has to be treated with antipsychotic medications and there is no alternate to that.* [Emphasis added.]

Dr. Yapa went on to testify that only two percent of the experts would consider other types of therapy to be alternatives to psychotropic drugs.

The county's position is that mental health professionals are not required to explore medically unaccepted and unrecognized alternatives. We agree. Section 51.61(1)(g), Stats., refers to "the alternatives to accepting the particular treatment offered." The imagination could provide an infinite number of alternatives to medication, many of which would be medically unacceptable, if not unthinkable. In a case such as this where there is expert testimony that none of the "alternatives" is medically acceptable, there are, essentially, no alternatives. It would be unreasonable to require the patient to be informed of things which do not exist.

579

The only available options for K.S. are taking the medication or not taking the medication. A discussion of the advantages and disadvantages of the medication (which did take place between K.S. and Dr. Yapa) sufficiently informed K.S. as required by sec. 51.61(1)(g), Stats. Despite being properly informed, K.S. was considered by Dr. Yapa, and later the trial court, to be incapable of understanding the advantages and disadvantages of being treated with medication. The trial court properly ruled that K.S. was incompetent to refuse medication.

*By the Court.*—Order affirmed.