IN RE the MARRIAGE OF: Judy K. SOM-
MERFIELD, Petitioner-Appellant,

v.

Patrick N. SOMMERFIELD, Respondent.

Court of Appeals

*No. 89-0777. Submitted on briefs January 17, 1990.—Decided
February 28, 1990.*

(Also reported in 454 N.W.2d 55.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Donald Roy Fraker* of *Starobin & Associates, S.C.* of Thiensville.

On behalf of the respondent, the cause was submitted on the brief of *Thomas E. Dolan* of Milwaukee.

Before Brown, P.J., Scott and Nettesheim, JJ.

BROWN, P.J.   Judy Sommerfield appeals from a judgment granting her a divorce from her husband Patrick. She raises two issues regarding child support and four issues regarding valuation and division of property. We hold that: (1) Patrick was properly found to be a serial family payer under Wis. Adm. Code ch. *HSS 80;* (2) the trial court did not err in awarding Judy custody while awarding Patrick the income tax dependency exemption for the minor child; (3) exceptional circumstances warranted deviation from the rule that divisible property should be valued as of the date of divorce; (4) the trial court erred in valuing Patrick's accounting business without regard to the worth of its goodwill; and (5) the court must reconsider its property division rulings and consider their tax consequences in light of our resolution of issue number four and the facts of record. We affirm in part, reverse in part and remand.

Judy and Patrick were married in March of 1983. At the time, Patrick had and still has custody of a teenage son, Pat, Jr., offspring of a previous marriage. In January of 1984, daughter Shelly was born into the Sommerfield family.

Prior to the marriage, Patrick had worked as an accountant for his father's accounting business, but in January of 1984 he incorporated his own accounting practice. During the marriage he also acquired a variety of licenses in sales of securities, life and health insurance. Judy was responsible for the children and the

845

household and provided Patrick with some assistance in his business.

Judy filed for divorce in August of 1986, but the parties continued to live together until September of 1987, when Judy moved out. The divorce trial was scheduled for October 29, 1987. On that day, Judy moved the trial court for an adjournment on the grounds that she believed the marriage could be saved with counseling. Patrick contested the adjournment but agreed to cooperate with counseling if it were ordered. However, the marriage could not be salvaged and trial began in early March of 1988 and concluded on March 24. Further facts are set forth in the opinion as necessary.

Judy first argues that Patrick's support obligation to Shelly should not have been determined by the formula for "serial family payers" found in Wis. Adm. Code sec. *HSS 80.04.* We disagree.

The code defines serial family payer as "a payer with an existing child support obligation who incurs an additional child support obligation in a subsequent family or as a result of a paternity judgment." Wis. Adm. Code sec. *HSS 80.02*(21). "Payer" is defined as a "parent who incurs a child support obligation as a result of a court order." Sec. *HSS 80.02*(18). "Child support obligation" is defined as "an amount of money that a person is legally obligated to pay toward the expense of raising a child or children in an intact family or pursuant to the order of a Wisconsin court." Sec. *HSS 80.02*(5).

The determination of whether Patrick is a "serial family payer" within the definition found in Wis. Adm. Code sec. *HSS 80.02*(21) turns on interpretation of statutory and administrative rules and application of those rules to undisputed facts. The question is thus one of law

that we review *de novo. L & W Constr. Co. v. Wisconsin Dep't of Revenue,* 149 Wis. 2d 684, 688–89, 439 N.W.2d 619, 620 (Ct. App. 1989); *State ex rel. Staples v. Young,* 142 Wis. 2d 348, 353, 418 N.W.2d 333, 336 (Ct. App. 1987).

Judy argues that Patrick was not a "payer" when child support was set for Shelly because at that time he was under no court order to support Pat, Jr. or any other child. Therefore, he did not fit within the "serial family payer" definition, which requires a "payer." We reject Judy's contention that the term "payer" refers only to those under a preexisting court order for support.

Administrative rules and statutory provisions dealing with the same subject matter are read together and harmonized if possible. *State v. Wagner,* 136 Wis. 2d 1, 5, 400 N.W.2d 519, 521 (Ct. App. 1986). We note that every rule for determining child support in Wis. Adm. Code ch. *HSS 80* refers to setting the obligations of a "payer." *See* secs. *HSS 80.03*(1), *HSS 80.04* (1), (2), (3), *HSS 80.05.* If these provisions govern only those already under a preexisting court order for support, one of the most common situations in which child support is set would not be governed by the rules: that is, the situation where a parent for the first time incurs a child support order. However, sec. 767.25(1j), Stats., mandates that the trial court use the child support guidelines whenever it initially sets child support. *Thibadeau v. Thibadeau,* 150 Wis. 2d 109, 117, 441 N.W.2d 281, 284 (Ct. App. 1989). Further, sec. *HSS 80.01*(2) makes ch. *HSS 80* applicable to all those petitioning for and responding to an order for child support. Finally, we note that example two following sec. *HSS 80.04*(1), which provides the formula for setting the obligations of a serial family payer, expressly contemplates a situation where the obli-

gated parent first has custody of children not subject to court ordered support and subsequently is ordered to support a noncustodial child. We can only give effect to the rules and the statutes by concluding that "payer" includes those incurring court ordered child support obligations for the first time. Patrick was therefore a "payer" when his support obligation to Shelly was being set.

Judy's second contention is that Patrick had no "child support obligation" to Pat, Jr., as that term is defined by Wis. Adm. Code sec. *HSS 80.02*(5), either before or after his obligation to Shelly was determined. We disagree. Patrick had and has a legal obligation to pay toward the expense of raising Pat, Jr. in an intact family and therefore comes within the ambit of sec. *HSS 80.02*(5).

Although Patrick was not under court order to pay child support for Pat, Jr., he was legally responsible for his son. Parents are legally required to assume such a responsibility. *Cole v. Sears, Roebuck & Co.,* 47 Wis. 2d 629, 634, 177 N.W.2d 866, 869 (1970).

Judy then argues that Patrick and his son do not constitute an "intact family." We may determine the ordinary meaning of words in a statute by reference to a recognized dictionary. *State v. Wittrock,* 119 Wis. 2d 664, 670, 350 N.W.2d 647, 651 (1984). *Webster's Third New International Dictionary* 1173 (1976) defines "intact" as "left complete or entire." Thus, an intact family is a complete family. We must then determine the meaning of "family" and what constitutes a "complete" one.

The law has long struggled with defining what is required to constitute a "family." We think that the

conclusion of the Michigan Court of Appeals in this regard is aptly stated:

> [T]he word family denotes a concept, the application of which is dependent upon the basis of affiliation of the group being analyzed juxtaposed with the public policies invoked by the particular circumstances of the case being reviewed.

*Bellarmine Hills Ass'n v. Residential Sys. Co.,* 269 N.W.2d 673, 675 (Mich. Ct. App. 1978).

Our supreme court interpreted the term "family" expansively in a zoning case to further the public policy favoring free use of property. *Crowley v. Knapp,* 94 Wis. 2d 421, 437-38, 288 N.W.2d 815, 823-24 (1980). In a property division case, it adopted a restrictive meaning to further the public policy of promoting marriage. *Watts v. Watts,* 137 Wis. 2d 506, 518-19, 405 N.W.2d 303, 308-09 (1987).

In the instant case, the question is whether a father and son living together are missing any component essential to constitute a family. If so, a court may order that a larger percentage of the father's income be given to support a noncustodial child, of necessity leaving a smaller percentage of income for the custodial child.

The paramount public policy furthered by child support obligations is that of providing children with financial support sufficient for their needs commensurate with their parents' ability to pay. *Sommer v. Sommer,* 108 Wis. 2d 586, 589-90, 323 N.W.2d 144, 146 (Ct. App. 1982). That policy would not be furthered by finding a father-son constellation less than a complete family.

A single parent has no greater resources with which to support a custodial child than does a two-parent family. Such a conclusion would defy common sense. Nor

does a child living with a single parent as a result of adoption, death or divorce have lesser needs than a child living with two married parents. The same percentage of a parent's financial resources should be available to children who by happenstance live under one or another of these situations. Indeed, we question whether any other conclusion could pass constitutional muster.

We conclude that a parent and a child together lack nothing to constitute a family. We therefore conclude that a parent and child living together constitute an "intact" family within the meaning of Wis. Adm. Code sec. *HSS 80.02*(5). The court did not err in setting Patrick's support obligation pursuant to the rules governing serial family payers.

Next, Judy complains that the trial court erred in awarding Patrick the income tax dependency exemption for Shelly. She asserts that the better reasoned decisions of other jurisdictions require the child and the exemption to go hand in hand.

However, this court has already held that dependency exemptions may be awarded to noncustodial parents. *Pergolski v. Pergolski,* 143 Wis. 2d 166, 173, 420 N.W.2d 414, 417 (Ct. App. 1988). We cannot disregard that precedent. The published decisions of any Wisconsin court of appeals panel have binding effect on all panels of this court. *In re Court of Appeals,* 82 Wis. 2d 369, 371, 263 N.W.2d 149, 149–50 (1978).

The award of the dependency exemption lies within the trial court's discretion. *See Pergolski,* 143 Wis. 2d at 173, 420 N.W.2d at 417. Judy complains that the award here constitutes an abuse of that discretion but we disagree. We will not find an abuse of discretion if there

850

exists a reasonable basis for the trial court's determination. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 520 (1971). Here, the trial court awarded the exemption to Patrick because Judy will receive the child support moneys tax free. We see nothing inherently abusive in splitting the tax advantages of supporting children between the parents.

Judy next argues that the trial court abused its discretion when it decided to value the marital estate as of October 29, 1987, the day on which the divorce trial was initially going to take place, instead of March 24, 1988, the day on which the divorce was granted. This court finds no abuse of discretion.

Valuation of the marital estate lies within the sound discretion of the trial court. *See Schinner v. Schinner,* 143 Wis. 2d 81, 97, 420 N.W.2d 381, 387 (Ct. App. 1988). The marital estate is usually valued as of the date of divorce. *Id.* at 98, 420 N.W.2d at 388. However, when conditions over which a party has little or no control arise, such special circumstances can warrant deviation from the rule. *Brandt v. Brandt,* 145 Wis. 2d 394, 422, 427 N.W.2d 126, 136 (Ct. App. 1988). In this court's judgment, the facts of this case warrant application of the exception.

Judy initiated divorce proceedings in August of 1986, alleging the irretrievable breakdown of a relatively short marriage. Although she and Patrick continued to live together until September of 1987, Judy permitted the scheduling of a divorce trial in October of that year. Patrick arrived at the courthouse on October 29, 1987 ready, willing and able to try his divorce case and fully prepared to litigate the value of the property. At this exceptionally late date, he was met by a surprise motion from his estranged wife, the initiator of the proceedings,

requesting counseling in the belief that the marriage was salvageable. Patrick was surprised by the request but his protests were unsuccessful.

During the period between the original trial date and the March trial, Patrick's assets increased. The court specifically noted that there had been turbulence in the stock market during October of 1987. It stated that Judy should not benefit from any increase in the value of Patrick's assets due to the market having settled down during the adjournment period.

We deem these circumstances sufficiently unusual to require application of the special circumstances rule. We think it would have been inequitable to render Patrick's preparation a pointless expense, and then also to permit Judy to benefit financially, all by virtue of Judy's misperceptions of the marital situation first revealed to the court on the very day of trial. Therefore, we find no abuse of discretion in the trial court's determination that special circumstances warranted valuing the divisible estate as of the first trial date.

Next, Judy complains that the trial court improperly valued Patrick's accounting business, P.N. Sommerfield, S.C., by including only its physical assets in the determination and disregarding the expert witness' valuation of its goodwill. We agree.

As we have noted, valuation is discretionary but discretion cannot be an arbitrary exercise; rather, discretionary decisions must be supported with facts of record. *Peerenboom v. Peerenboom,* 147 Wis. 2d 547, 553, 433 N.W.2d 282, 285 (Ct. App. 1988). The only reason given by the trial court for rejecting the expert testimony was that "the testimony was based on certain assumptions, including sale of the business with a covenant not to

compete, which would leave [Patrick] without any earning capacity." We are unable to discern the basis for this rationale.

Property to be divided at divorce is to be valued at its fair market value. *Liddle v. Liddle,* 140 Wis. 2d 132, 138, 410 N.W.2d 196, 199 (Ct. App. 1987). Fair market value assumes sale by one who desires but is not obligated to sell and purchase by one willing but not obligated to buy. *Id.* The goodwill of a going concern can be a marketable asset. *Peerenboom,* 147 Wis. 2d at 552, 433 N.W.2d at 284. The expert testified that in assessing goodwill, he considered that a covenant not to compete covering two years would be a normal condition of sale of this business.

To be enforceable, a noncompete agreement must be reasonable as between the parties and particularly as to the party restrained, considering time, space, purpose and scope. *Reiman Assocs., Inc. v. R/A Advertising, Inc.,* 102 Wis. 2d 305, 309, 306 N.W.2d 292, 295 (Ct. App. 1981). Such a covenant would not be reasonable if Patrick were left without earning capacity. *Cf. Chuck Wagon Catering, Inc. v. Raduege,* 88 Wis. 2d 740, 754–55, 277 N.W.2d 787, 793 (1979) (holding that an employee is not unreasonably restrained when the covenant does not prohibit him from working in the business altogether).

While Patrick presently earns a living from his own service corporation, he has been an employee in the past. We see no reasons in the record that he is now foreclosed from any earning opportunities as an accountant except those derived from owning his own business.

Further, there is evidence that the goodwill of the business is separate from Patrick's earning capacity. The

expert testified that Patrick's salary is separate from the worth of the business, including its goodwill.

A trial court may determine, on the facts, that goodwill is not a separate asset but merely a measure of earning capacity. *Peerenboom,* 147 Wis. 2d at 552, 433 N.W.2d at 284. This determination would turn in part on whether the accounting practice's goodwill could be sold on the open market, or whether there is an ethical or contractual barrier to Patrick's disposing of his practice. *Id.* at 551-52, 433 N.W.2d at 284. We cannot, however, uphold a determination that there is no separate, marketable goodwill based on the unfounded conclusion that a sale of Patrick's business would require that he sign an unenforceable noncompete agreement. We therefore reverse and remand this issue.

Next, Judy complains that the marital estate was divided unequally with inadequate consideration of the relevant factors enumerated in sec. 767.255, Stats. Because we remand the valuation of a significant asset for further consideration by the trial court, we cannot conclusively resolve this issue.

Finally, Judy complains that the trial court gave no consideration to tax consequences of the property division, even though the issue was raised in requested post-trial briefs and full financial disclosure—with the exception of income tax returns not yet prepared at the date of trial—was before the court.

A trial court should take the tax consequences of its property division into consideration when making its rulings. *Ashraf v. Ashraf,* 134 Wis. 2d 336, 343-44, 397 N.W.2d 128, 131 (Ct. App. 1986). On remand, the court should therefore consider such consequences when it reconsiders its property division decisions in light of any

854

new valuation given P.N. Sommerfield, S.C. and of the factors contained in sec. 767.255, Stats. We note, however, that tax considerations are not controlling; how the arrangement works out is governed by a test of fairness. *Ashraf,* 134 Wis. 2d at 344, 397 N.W.2d at 131.

No costs to either party.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.