IN RE the MARRIAGE OF Lori A. ROBERTS, Petitioner-Appellant,

v.

Floyd N. ROBERTS, a/k/a Steve Roberts, Respondent-Respondent.

Court of Appeals

*No. 92-1432. Submitted on briefs August 21, 1992.—Decided December 17, 1992.*

(Also reported in — N.W.2d —.)

For the petitioner-appellant the cause was submitted on the briefs of *Patricia M. Heim* of *Parke, O'Flaherty, Heim, Egan, Koby and O'Keefe, Ltd.* of La Crosse.

For the respondent-respondent the cause was submitted on the brief of *Ramona A. Gonzalez* of *Bosshard & Associates* of La Crosse.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J.  Lori Roach appeals from an order revising her child support obligation. The issue is whether the trial court exceeded its discretion when it ordered Roach to pay child support based on her earning capacity after she remarried, had another child and elected to quit her job in order to stay home and care for the child. We affirm.

Roach and her former husband, Steven Roberts, were divorced in 1986. In April 1989 physical custody of the couple's two minor children was transferred to Rob-

erts, and Roach was ordered to pay child support amounting to twenty-five percent of her gross income under the percentage guidelines found in Wis. Adm. Code sec. HSS 80. Roach, who had remarried, apparently was unemployed for significant periods of time and paid no support for the Roberts children. Several hearings on the question ensued, and in March 1992 Roberts moved the court for an order specifically requiring Roach to pay child support in the amount of $70 per week.

At the hearing on the motion, Roach testified that she had been employed, earning $7 per hour, but left her job when she and her present husband decided she should remain at home with their child. She argued to the trial court that any support obligation to her children of the former marriage should be suspended while she stayed at home with the new child. She also stated that she had developed carpal tunnel syndrome which would prevent her from returning to her former employment. The court rejected her arguments, concluding that she should pay the guideline amount—twenty-five percent—of a minimum wage of $4.25 per hour, or a total of $42.50 per week. Roach appeals from the order implementing that decision.

The establishment and revision of child support is committed to the discretion of the trial court. *Edwards v. Edwards*, 97 Wis. 2d 111, 116, 293 N.W.2d 160, 163 (1980). We will affirm the trial court's exercise of discretion where the decision reflects a "reasoning process dependent on facts in, or reasonable inferences from, the record and a conclusion based on proper legal standards." *Abitz v. Abitz*, 155 Wis. 2d 161, 174, 455 N.W.2d 609, 615 (1990) (quoting *Ashraf v. Ashraf*, 134 Wis. 2d 336, 340-41, 397 N.W.2d 128, 130 (Ct. App. 1986)).

Indeed, we have often said that "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions." *Schneller v. St. Mary's Hosp.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250, 254 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).

A trial court exceeds its discretion when it sets support without considering the ability of the obligated parent to pay. *Schwantes v. Schwantes*, 121 Wis. 2d 607, 631, 360 N.W.2d 69, 80 (Ct. App. 1984). And where, as here, support is revised, sec. 767.32(1), Stats., requires the court to take into consideration "each parent's earning capacity and total economic circumstances." We note, too, that in considering Roach's total economic circumstances, the court may properly consider her second husband's income, *Abitz*, 155 Wis. 2d at 175, 455 N.W.2d at 615, although the non-obligated spouse's assets may not be used to satisfy the child support obligation. Section 766.55(2)(c), Stats.

Here, the trial court had before it evidence of Roach's employment and earnings history, together with her reasons for leaving her former job, her estimates of the cost of child care and her present husband's income and the support he provides to her and the new child. The court was also aware of Roberts's income and his general economic circumstances.[1]

---

[1] Issues surrounding Roach's obligations to support the two Roberts children had been litigated before the court on several occasions in the years and months leading up to the hearing and order which comprise the subject of this appeal. The court noted at the conclusion of the hearing, for example, that the majority of the issues had been litigated some six or seven months earlier.

Roach maintains, however, that basing the order on her earning capacity, rather than actual income, was improper because earning capacity can be a valid basis for a support order only if there is evidence that she is "shirking" her responsibilities or is not working at an occupation for which she is best suited.

In *Wallen v. Wallen*, 139 Wis. 2d 217, 224, 407 N.W.2d 293, 295 (Ct. App. 1987), we discussed the concept of "shirking" and concluded that:

> [a] trial court's consideration of earning capacity rather than actual earnings is improper absent a finding that the parent was not "fairly or diligently working at the occupation which he [or she was] best suited for, [or] that he [or she was] willfully accepting employment and resultant lower compensation for the purposes of reducing his [or her] ability to pay . . . support . . . ."

(Citations omitted.) We also noted, however, that:

> There is no set list of factors which are decisive in a shirking determination. However, perhaps the most common factor accompanying such a finding is a voluntary or self-inflicted change in financial circumstances. For example, in such cases, *a parent has quit his or her employment* . . . or by some other means has brought about his or her reduced ability to pay support." *Id.* at 225-26, 407 N.W.2d at 296 (emphasis added; citations omitted).

In addition, as the supreme court noted in *Abitz v. Abitz*, 155 Wis. 2d 161, 175 n.6, 455 N.W.2d 609, 615 (1990), specific findings reflecting that the parties' total economic circumstances were directly compared is not necessary. Rather, where the record indicates that the trial court had before it full financial disclosure from the parties, that is sufficient to establish that their total economic circumstances were considered.

In *Wallen*, the change in the payor spouse's financial circumstances was involuntary. As a result, we required "positive evidence of bad faith or other evidence discrediting [him] or rendering his actions inherently improbable" to support a support order based on his earning capacity, rather than actual earnings. *Id.* at 228, 407 N.W.2d at 297. It follows that where, as here, the payor spouse's cessation of employment is voluntary, and other facts and circumstances of the case so warrant, no bad faith need be shown for an order to be based on that spouse's earning capacity, rather than his or her actual present earnings.

We think, therefore, that the trial court could, within the permissible bounds of its discretion, conclude that Roach's obligation to support the Roberts children continued despite her voluntary choice to remain at home with a child of a subsequent marriage.

As indicated, the same and related issues had been previously litigated before the court. Indeed, several months earlier, in a hearing set to determine Roach's arrearages on the twenty-five-percent-of-gross-income order, the court specifically advised Roach that the fact that she desired to remain at home to care for her new child would not relieve her of the obligation to provide support for the children in Roberts's custody.

The job Roach left paid $7 an hour, and she left it voluntarily.

> I chose to stay home with my child. I believe it's important for a mother to be at home with her child. I was not able to be home with my other two children, and I feel I was deprived of that right. And now, I feel I want to stay home, and my husband also wants me to stay home with our child.

It was not a decision made in bad faith; but, as we have indicated, it need not be. Roach, like any parent

411

with an obligation to provide support for a child or children not in his or her custody, has leeway in choosing employment. "A divorced [parent] should be allowed a fair choice of a means of livelihood and to pursue what he [or she] honestly feels are his [or her] best opportunities even though he [or she] might for the present, at least, be working for a lesser financial return." *Balaam v. Balaam*, 52 Wis. 2d 20, 28, 187 N.W.2d 867, 871 (1971). But the rule is "subject to reasonableness commensurate with his [or her] obligations to his [or her] children and . . . former [spouse]." *Id.*

Here, Roach's election to forego employment for the benefit of her most recent child operates to the detriment of her other children—whose needs for support are certainly no less. As we and the supreme court have often recognized, "divorce terminates only the relationship of husband and wife, and does not affect in any manner the parental relations or duties of the parties." *Abitz*, 155 Wis. 2d at 177, 455 N.W.2d at 616 (quoting *Hutschenreuter v. Hutschenreuter*, 23 Wis. 2d 318, 321, 127 N.W.2d 47, 49 (1964)). Balancing the interests of the children and the parents in situations such as this is never an easy task, but we believe the trial court struck a balance that was within the boundaries of its discretionary authority.

*By the Court.*—Order affirmed.