IN RE the MARRIAGE OF: Karen K. LARIBEE, Petitioner-Respondent and Cross-Appellant,

v.

Stephen F. LARIBEE, Respondent-Appellant and Cross-Respondent.

Court of Appeals

*No. 85–2286. Submitted on briefs August 29, 1986.—Decided March 4, 1987.*

(Also reported in 405 N.W.2d 679.)

On behalf of the respondent-appellant and cross-respondent the cause was submitted on the briefs of *Louise A. Ptacek* of *Russo & Ptacek* of Milwaukee

On behalf of the petitioner-respondent and cross-appellant the cause was submitted on the briefs of *Charles S. Blumenfield* of *Shneidman, Myers, Dowling, Blumenfield & Albert* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.  On this appeal and cross-appeal from a judgment of divorce, Stephen F. Laribee challenges the trial court's inclusion of $45,000 in the marital estate. Stephen had paid the $45,000 to his father purportedly as interest on a $30,000 loan. Stephen also claims that the trial court erred in its treatment of moneys expended by Stephen and his former wife, Karen, during the pendency of the divorce. He also makes several challenges to the form and content of the trial court's findings of fact and conclusions of law. Both Stephen and Karen, on her

cross-appeal, contend that the trial court's valuation of Stephen's interests in his retirement funds was erroneous. Karen also argues that the trial court should have included, as part of the marital estate, the entire amount paid to Stephen's father. Karen also contends that the trial court erred in not ordering that interest be paid on the $45,000 for the period it was held by Stephen's parents. Karen lastly argues that the trial court abused its discretion in denying her request that Stephen contribute towards her attorney fees. We affirm the judgment.

We first address Stephen's challenges to the trial court's findings of fact and conclusions of law that are not related to any other issue on appeal. Stephen's complaint that Karen's counsel prepared the document using the preprinted legal form is meritless. Stephen's challenge is wholly to the form, not the substance, of the document. Neither error nor conceivable prejudice to the parties arises from the use of the preprinted document.

The trial court issued a partial decision from the bench at the close of the trial. After briefing by the parties, the trial court issued a written decision on the remaining questions. Karen's counsel prepared findings of fact and conclusions of law for the court's signature. The trial court signed the findings as drafted by counsel.

Stephen contends that the trial court's decisions do not support the findings of fact that deny maintenance to Stephen and award various life insurance policies to the policyholder with the couple's children as beneficiaries. Although the trial court's decisions do not make the specific findings challenged by Stephen, the court's entry of the judgment constitutes an adoption of the findings of fact and conclusions of

law contained therein. *See* sec. 805.17(2), Stats.; *cf. L. Rosenheimer Malt & Grain Co. v. Village of Kewaskum,* 1 Wis. 2d 558, 560, 85 N.W.2d 336, 337 (1957). Furthermore, maintenance to Stephen and the life insurance policies were not controverted issues at trial. Since Stephen did not request maintenance, we fail to see how the denial of maintenance is error. Similarly, Stephen does not show how the trial court's treatment of the insurance policies is prejudicial.

The trial court ordered that Stephen pay $1312.50 per month in family support. Stephen contends that the language directing those payments is inadequate to qualify them for the intended tax impact, that is, taxable income to Karen and a deductible expense for Stephen. This argument is premised on a supposed response of the Internal Revenue Service to the language. The alleged insufficiency of the language is wholly speculative. If the IRS were to deem the language insufficient, Stephen may, at that time, seek whatever relief is appropriate. The argument is, however, premature at this juncture.

Stephen next takes issue with the valuation in the findings of the personal property in the possession of the parties. The value of all personal property in the marital estate was $7112. Stephen's share of the personal property was valued at $3474, leaving Karen's share at $3638.

Stephen claims that the $7112 figure is erroneous because it includes the value of several items of furniture obtained by Stephen from Carroll College. The trial court's decision specifically excluded those items from the marital estate. In his brief, Stephen values the Carroll College items at $640.

We see no reversible error. Stephen's description and valuation of these items are not supported by any evidence in the record. Even assuming that the value was $640 and that it was mistakenly included in the marital estate's personal property figure, given the total marital estate value of $191,982, any error would be *de minimis.*

We next consider the trial court's valuation of Stephen's retirement plans. The stipulated cash value of the retirement funds at the time of trial was $86,500. Stephen's expert, Dr. Harish Batra, testified that the present value of the retirement plans, after taxes, was $33,454.25. Karen did not present expert testimony on this issue.

Dr. Batra assumed that Stephen's retirement plans would be immediately liquidated and the proceeds added to Stephen's current income. The tax implications of that procedure resulted in the present value of $33,454.25. The trial court rejected that methodology as "totally impractical" and inconsistent with sound financial practices. The trial court also noted that immediate liquidation was not an option under some of the retirement plans.

Stephen argues that the trial court erred in not accepting the valuation proffered by Dr. Batra. On her cross-appeal, Karen argues that the twenty-five percent figure used by the trial court for tax deduction purposes was excessive. Before reaching the merits of the valuation, we note that Karen is not in a good position to argue that the trial court erred as she offered no evidence on this question. *Cf. Wilberscheid v. Wilberscheid,* 77 Wis. 2d 40, 48–49, 252 N.W.2d 76, 81 (1977). Regardless of that consideration, however,

we affirm the trial court's valuation of Stephen's retirement plans.

A trial court has broad discretion in the valuation and division of retirement and pension rights. *Peterson v. Peterson,* 126 Wis. 2d 264, 265, 376 N.W.2d 88, 89 (Ct. App. 1985). This court will affirm the valuation if the trial court considered the relevant facts and its conclusion is not clearly erroneous. *Id.* at 265–66, 376 N.W.2d at 89. Future taxes clearly impact on the present value of retirement plans. *Selchert v. Selchert,* 90 Wis. 2d 1, 9, 280 N.W.2d 293, 297 (Ct. App. 1979).

The trial court had the authority to reject Dr. Batra's valuation. A trial court is not required to adopt uncontradicted testimony if it is discredited or inherently improbable. *Holbrook v. Holbrook,* 103 Wis. 2d 327, 335, 309 N.W.2d 343, 347 (Ct. App. 1981). We defer to the trial court's judgment in that regard.[1]

Since Karen did not present a pension valuation, the trial court was faced with an evidentiary vacuum from which to address the present value of the retirement plans, a decidedly nebulous area. Such a scenario arises with disturbing regularity in divorce cases, especially when dealing with tax questions. We conclude that when the trial court sets forth the

---

[1]The express rejection by the trial court of the expert testimony distinguishes this case from our recent decision in *Ashraf v. Ashraf,* 134 Wis. 2d 336, 397 N.W.2d 128 (Ct. App. 1986). In *Ashraf,* we held that the trial court erred in not explaining why it did not adopt the undisputed expert testimony regarding the tax impact on the pension plan. *Id.* at 345–46, 397 N.W.2d at 132. We noted in *Ashraf* that the trial court did not find the expert testimony incredible or against reasonable probabilities. *Id.* at 345, 397 N.W.2d at 132.

underlying rationale for its consideration of tax consequences on a retirement or pension plan, we should uphold those findings unless clearly erroneous or the result is unconscionable under the circumstances of the case. Such deference to the trial court's decision is consistent with this court's recognition of the predicament faced by a trial court when parties ask the court to address a question without providing necessary evidentiary tools.

In this case, the trial court referred to a fifteen percent "rule of thumb" deduction for tax purposes. That rule of thumb is derived from *Selchert*, 90 Wis. 2d at 9, 280 N.W.2d at 297. *See Ashraf v. Ashraf*, 134 Wis. 2d 336, 345–46, 397 N.W.2d 128, 132 (Ct. App. 1986). Due to the sizeable anticipated cash value of the plans at retirement, the court, however, determined that a twenty-five percent tax deduction would be more appropriate in this case.[2] That determination is neither unconscionable nor clearly erroneous.

[2]The entirety of the trial court's comments are as follows:

It is the normal position of this court in a pension plan and if the doctor only had a six thousand dollar pension plan, I would simply use the standard fifteen percent deduction for tax purposes and go from there. There is a rule of thumb that some people live by, that the pension that is being built, that is the active pension of employment, increases or triples—or doubles, excuse me, every eight (8) years. That being the case, the doctor can look forward to a minimum pension with the Wisconsin retirement funds of sixty to seventy thousand dollars if he had, being age forty-one years at this moment, lives and takes normal retirement. If the other plans just appreciate in value by normal interest generated, even without additional contributions of the doctor, we are looking at a program which could reach $200,000. In this particular case, taking into consideration the tax consequences, I do not believe a fifteen percent reduction in the pension plan is enough. I do believe that using a ten year average, taking advantage of the code, the doctor would still be subjected to a twenty percent

We next address the trial court's disposition of the $75,000 paid by Stephen to his parents just prior to the commencement of the divorce action. The trial court found that $30,000 was proper payment of a loan made to the parties when they built their home in 1975–76. The trial court, however, rejected Stephen's claim that $45,000 in interest was also owing on the loan. The trial court ordered that the $45,000 be returned to the marital estate. The trial court refused, however, to order that the money be repaid with interest from the date of payment to Stephen's parents.

Stephen contends that the trial court's finding that the $45,000 payment did not represent interest on the original $30,000 loan is clearly erroneous. On her cross-appeal, Karen contends that the $30,000 was a gift to the parties from Stephen's parents and that the trial court should have returned the entire $75,000 to the marital estate. She also argues that the trial court abused its discretion in not ordering that Stephen return the money with interest. We uphold the trial court's findings.

A trial court's finding of fact will not be disturbed on appeal unless it is clearly erroneous. *Kastelic v. Kastelic,* 119 Wis. 2d 280, 285, 350 N.W.2d 714, 717 (Ct. App. 1984). The weight of evidence and credibility of witnesses are matters for the trial court and where

capital gain for federal purposes, and a state tax which, although reflected in a reduction on federal taxes, would still amount to a considerable fortune. I am, therefore, granting in this particular case, and this is high from this court, a twenty-five percent tax deduction which amounts to $21,400, and I establish the marital value of the various pension plans having used this rationale, at $64,000. That will be the value of the pension plan.

more than one inference can reasonably be drawn from the evidence, we are obliged on review to accept the one drawn by the trier of fact. *Holbrook,* 103 Wis. 2d at 334, 309 N.W.2d at 347.

Three promissory notes, each for $10,000, reflecting the debts were introduced into evidence. It is undisputed that the moneys were used to build the Waukesha residence. Stephen testified that his parents had made similar loans to other family members. The trial court's finding that the $30,000 was a loan, not a gift, is not clearly erroneous. Therefore, the trial court did not abuse its discretion in denying Karen's request to return the $30,000 to the marital estate.

The $30,000 was lent to the parties between October, 1975 and the spring of 1976. The promissory notes were payable on demand. No interest rate was reflected on the notes. Stephen did not make any payments on the debt until the $75,000 payment in September, 1983. While Stephen claimed that the $45,000 was interest calculated over the life of the loan, he also testified that he did not claim any interest deduction on his 1983 taxes, nor did his parents report a gain or any income from the transaction. The trial court's finding that the $45,000 was not interest on the loan is also not clearly erroneous.

The trial court refused to order that Stephen pay interest on the $45,000 for the time it was in his parents' possession. The $45,000 does not constitute a delayed property division payment so that interest would typically be appropriate. *See Duffy v. Duffy,* 132 Wis. 2d 340, 349, 392 N.W.2d 115, 119 (Ct. App. 1986). In light of the overall property division and the

largely nonliquid nature of the marital assets, the refusal to require Stephen to repay an even greater lump sum was not an abuse of discretion.

The propriety of the trial court's treatment of the parties' expenditures during the pendency of the divorce is the subject of Stephen's two final arguments. First, he argues that the trial court erred by not including in the marital estate $5940 withdrawn by Karen from a joint account shortly after the divorce was commenced. Karen testified that she used the money for living expenses for herself and the three children until a temporary support order could be effectuated. Second, Stephen contends that the trial court failed to consider his payment of joint marital debts during the pendency of the divorce.

The trial court offset, as "equitably equal," the amounts which each party claimed to have spent during the pendency of the divorce. While the failure to deduct joint debts from the marital estate is arguably error, *see Weiss v. Weiss,* 122 Wis. 2d 688, 699, 365 N.W.2d 608, 614 (Ct. App. 1985), the trial court's use of an offset mechanism negates any possible prejudice to either party from the error. Therefore, we do not find an abuse of discretion.

■ The final question is whether the trial court abused its discretion in denying Karen's request for a contribution to her attorney fees. Awarding attorney fees is within the discretion of the trial court and will not be altered on appeal unless that discretion is abused. *Kastelic,* 119 Wis. 2d at 290, 350 N.W.2d at 719. The trial court must determine the need of the spouse seeking contribution, the ability of the other spouse to pay and the reasonableness of the total fees. *Id.*

In this case, the trial court concluded that Karen's award under the property division is sufficient to pay her own fees. That statement is tantamount to a determination that Karen did not have a need for contribution. That conclusion is supported by the record and is not an abuse of discretion.

Finally, Stephen asks that this court order Karen to contribute to the costs of the transcripts necessary to this appeal. Stephen cites no authority in support of his request.

Transcript fees are a cost borne by an appellant. If successful on the appeal, the appellant may recover the costs from the respondent under Rule 809.25(1), Stats. As we affirm the judgment in this case, Stephen is not entitled to costs and his request is meritless.

*By the Court.*—Judgment affirmed.