IN RE the MARRIAGE OF:

Jay R. LELLMAN, Petitioner-Appellant,

v.

Annette MOTT, Respondent-Respondent.

Court of Appeals

*Nos. 96–0618–FT, 96–1689–FT. Submitted on briefs July 30, 1996.—Decided August 20, 1996.*

(Also reported in 554 N.W.2d 525.)

For the petitioner-appellant the cause was submitted on the briefs of *David J. Rice* of *Herrick, Hart, Duchemin, Spaeth, Sullivan & Schumacher, S.C.* of Eau Claire.

For the respondent-respondent the cause was submitted on the brief of *Douglas O. Johnson* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Jay R. Lellman appeals a judgment setting his child support obligation at 17% of his net income found by the court to be $100,000 per year, and

awarding attorney fees to his former wife, Annette Mott, for legal services incurred in obtaining a modification of the previously entered divorce judgment.[1] Lellman contends that the trial court adopted an incorrect methodology in determining his net annual income, and failed to credit reasonable business expenses in determining the amount of Lellman's net annual income. Because we conclude that the court applied a proper methodology in determining Lellman's net annual income, that the court's finding of $100,000 annual income is reasonable and supported by the evidence of record, and that Mott was entitled to attorney fees for expenses incurred based upon Lellman's refusal to make accurate disclosures of his financial circumstances, the judgment is affirmed.

Lellman and Mott were married in 1979 and divorced one year later. One child was born of the marriage. In the divorce judgment, Lellman was required to pay child support in the amount of $120 per month. Fifteen years after the judgment, Mott sought modification of the child support provisions alleging that Lellman enjoyed substantially larger income than reflected by his current monthly child support payment.

Lellman is self-employed in a business known as Home Renovators involving home repairs on existing residences. He also owns and manages a series of duplexes and four-plexes that he rents to various tenants. Lellman asserts that in 1994 he had a federally adjusted gross income of $10,967. He was required to produce his income tax returns, bank statements and other financial information. Although he surrendered some of the information, much of the required

---

[1] This is an expedited appeal under RULE 809.17, STATS.

information was not disclosed and could not be determined from the records that were disclosed. After examining the records that were produced, the court found that Lellman's business expenses were paid in cash and by credit card, but that the receipts did not coincide with the claimed business expenses.

Lellman claimed a gross income of $126,865 on his tax return, which the trial court found to be an intentional understatement of his actual gross income. The court based its finding that Lellman had intentionally misrepresented his income and expenses upon the inconsistencies within his business records. The court also based its finding on the fact that Lellman had adopted a lifestyle requiring substantially greater expenses than was consistent with his income. His assets include a thirty-one foot boat, a 1987 Acura and 1987 Mercedes and a substantial number of other assets, including real estate. Additional facts will be set forth in the opinion in the analysis of the various issues raised by Lellman.

Lellman contends that the trial court erred by determining his net annual income to be $100,000. Lellman assumes a specified annual income and applies a series of subtractions for expenses and concludes that the trial court's failure to use these numbers in achieving Lellman's annual income is clearly erroneous. The trial court, however, rejected Lellman's claimed annual earnings as an intentional understatement of his actual earnings and further rejected the claimed expenses as an intentional overstatement of his true expenses.

Lellman's annual income and the existence of various claimed expenses are facts to be determined by the trial court based upon the evidence. Factual determi-

nations made by the trial court are reviewed under a clearly erroneous standard. *Bentz v. Bentz,* 148 Wis. 2d 400, 404, 435 N.W.2d 293, 294 (Ct. App. 1988). As long as the determination of fact could be achieved by a reasonable factfinder based upon the evidence presented, a reviewing court is required to accept the facts found by the trier of fact. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981).

The trial court made several important findings of fact that must be reviewed under the clearly erroneous standard of review. Section 805.17(2), STATS. First, the trial court found that Lellman had deliberately understated his income. Lellman contended that his annual adjusted gross income was just under $11,000. The trial court found that Lellman had accumulated five rental properties with a combined value exceeding $200,000. Additionally, Lellman purchased a thirty-one foot boat in 1990 for $5,000. Despite his extensive renovations to the boat, Lellman contended the boat had depreciated to $1,500. This was sharply contrasted by another witness whom the trial court found "credibly testified that the boat is worth $25,000 to $30,000."

The trial court also found that Lellman had intentionally overstated his expenses. The court based this finding on the financial records, which disclosed that expenses were paid from a variety of sources, none of which supported Lellman's claimed expenses.

The trial court determined that Lellman's lifestyle including the accumulation of a number of different assets, such as the boat, automobiles and a substantial real estate portfolio, were inconsistent with his claimed net annual income of less than $11,000. The trial court also concluded that the mortgages on Lellman's property, obtained after the order to show cause to increase child support had been filed, were an attempt by

Lellman to disguise his assets by mortgaging these real estate assets to the maximum. If the mortgage payments reflect loan proceeds retained but undisclosed by Lellman, the court could properly disregard the amount of mortgage payments claimed by Lellman.

Lellman asserts that one of the vehicles is not his and has explanations as to how he could accumulate such assets with such a modest annual net income. The trial court, however, was not required to accept Lellman's explanation for the accumulation of such a substantial number of assets. The credibility of witnesses and the weight to be attached to that evidence is a matter uniquely within the discretion of the finder of fact. *Laribee v. Laribee*, 138 Wis. 2d 46, 54-55, 405 N.W.2d 679, 683 (Ct. App. 1987).

Here, the court rejected Lellman's explanations as to his accumulation of substantial amounts of valuable property and concluded that his net assets were a reflection of substantially greater income than was disclosed on his financial disclosure form. Based upon all the evidence, including Lellman's lack of records, his accumulation of substantial assets, and evidence of a deliberate intention to manipulate his financial disclosure so as to minimize his child support obligation, there is sufficient evidence to support the trial court's finding that Lellman enjoyed a substantially higher income than was disclosed as part of his financial disclosures.

Next, we move to consideration of the trial court's factual finding of Lellman's net income for the purpose of setting child support. The court candidly acknowledged that Lellman's financial records were so incomplete that it was impossible to determine with

172

any degree of specificity his actual income or expenses. The fact that Lellman by his deliberate conduct frustrated an accurate calculation of his net income, however, does not preclude the trial court from making the appropriate finding of fact. The trial court may make its finding based upon the available evidence when a party's intentional conduct precludes a precise determination of that annual income.

The test to be applied by the appellate court must, of necessity, involve a determination whether the trial court's finding of fact could reasonably be made based upon the available information. *Hartung*, 102 Wis. 2d at 66, 306 N.W.2d at 20-21. The trial court's factual finding that Lellman's net annual income is $100,000 is reasonably supported by the record and we, therefore, affirm this finding.

Lellman's income tax returns listed a business income of $126,865. Lellman's bank account, however, did not reflect that level of income, which led the trial court to believe income was being diverted. The claimed business expenses similarly create an inference of other resources. The trial court found that many of the expenses that were allegedly paid by check had no corresponding check in the account records furnished to the court. While Lellman provides explanations for all of these facts, the trial court is not required to accept his testimony as credible. *See Laribee*, 138 Wis. 2d at 54-55, 405 N.W.2d at 683.

Substantial evidence existed, based upon the totality of the record, for the trial court to conclude that Lellman had an income of $100,000. Lellman's incomplete disclosures at trial made an exact determination of his income impossible. Nevertheless, the evidence

173

did establish a range in which his income fell. The record discloses approximately $69,000 in business income and at least $57,000 in rental income, totalling $126,000. Additionally, Lellman has $17,000 in cash receipts that did not come from either of these sources. Subtracting for his legitimate expenses and mortgages, the trial court could have reasonably concluded that Lellman had a net annual income of $100,000. Therefore, the record contains substantial evidence to support the trial court's finding of fact, especially in light of Lellman's partial disclosures and attempts to hide assets.

Lellman contends that the trial court applied an improper methodology in determining his net annual income. This claim is based upon the trial court's candid admission that a precise determination of net annual income is impossible because of Lellman's intentional conduct. The court accordingly likened its role to that of a jury in a personal injury case. It is this analogy that Lellman attacks as evincing an improper methodology employed by the trial court in making its findings of fact.

Lellman's argument both misconstrues and overemphasizes the court's comment. The trial court accurately reflected its frustration with its inability to determine with precision Lellman's annual net income. Because Lellman did not produce the necessary financial records and because he intentionally misrepresented both his income and expenses, the trial court was left to determine a reasonable figure attributable to Lellman as a net annual income. The court correctly identified its role in making determinations of fact that could reasonably be made based on the evidence before it. The analogy to the court functioning like a jury in a civil case is only a reflection of the

requirement that the rule of reason must be used when specific evidence of actual income and expenses is unavailable due to a party's intentional conduct.

Lellman appears to contend that without the financial information that he was obligated but failed to disclose, the trial court is powerless to make the specific determinations required in this case. We disagree and note that not only may Lellman's conduct be punishable as contempt or perjury, but that it was Lellman's misconduct that placed the court in the position of being required to make reasonable approximations. Lellman cannot be heard to complain that this approximation was excessive when the precise information available to make that determination was in his exclusive control.

Finally, Lellman contends that the court erred by awarding attorney fees in the amount of $2,182. Although no precise basis for this claim is articulated in Lellman's brief, he appears to argue that the American rule, whereby each party is responsible for his or her own attorney fees, should prevail in this case. However, when counsel is required to expend additional time because of a party's lack of cooperation, attorney fees may be awarded to compensate for the additional time. *See Seymour v. Eau Claire*, 112 Wis. 2d 313, 320, 332 N.W.2d 821, 824 (Ct. App. 1983). In this case, although Lellman claims he fully cooperated in the disclosure of his financial information, the disclosures were so inadequate that counsel was required to spend a substantial amount of time attempting to construct Lellman's actual income and expenses.

The decision whether to award attorney fees under such circumstances is committed to the trial court's

discretion. *Bisone v. Bisone*, 165 Wis. 2d 114, 123-24, 477 N.W.2d 59, 62 (Ct. App. 1991). Here, the trial court reasonably exercised its discretion by awarding attorney fees based upon Lellman's failure to produce satisfactory financial records from which his financial status could be accurately determined. The court was not only empowered to make an award of attorney fees but the additional time required by counsel because of Lellman's intentional conduct fully warranted the court's awarding of attorney fees so as to compensate counsel for that time.

We conclude that the trial court's judgment setting Lellman's net annual income at $100,000 for the purpose of establishing child support was reasonable and supported by substantial evidence. Additionally, the trial court properly exercised its discretion by awarding attorney fees to Mott. The trial court's analogy to a civil jury was simply that and in no way taints the methodology Lellman forced the court to adopt.

*By the Court.*—Judgment affirmed.