PER CURIAM.
¶1 Allan White appeals a judgment of divorce, challenging the property division. Allan argues that the circuit court erred in multiple respects with regard to the valuation and division of property that Allan inherited. We reject Allan's arguments, and affirm the judgment.
Background
¶2 Allan and Sheri married in 2007 and divorced in 2017, when both were 51 years old. They had both worked in real estate, including acquiring investment properties, for about 15 years at the time of their divorce.
¶3 Although Allan and Sheri each had attorneys at some points earlier in the divorce proceedings, both appeared pro se at a final pretrial conference and the final evidentiary hearing held over two days. The court reviewed and heard evidence regarding a substantial number of properties acquired both prior to and during the marriage, retirement accounts acquired both before and during the marriage, joint and individual business interests, various bank accounts and investments, multiple vehicles, personal property, substantial credit card debt, and tax liabilities.
¶4 It is undisputed that Allan came to the divorce trial unprepared. For example, Allan filed an incomplete financial disclosure statement prior to the hearing that he admitted was "woefully not accurate." Moreover, although the primary dispute on appeal involves the circuit court's handling of issues relating to a more than $1.5 million inheritance Allan received during the marriage, and Allan was required to make such a disclosure of all assets owned jointly or "separately" well before trial pursuant to the requirements of WIS. STAT. § 767.127(1) and (2),[1] the first time the circuit court learned of the inheritance was when Sheri mentioned Allan's inheritance at the hearing.
¶5 We choose not to detail the hearing evidence. It is sufficient to say that we agree with the circuit court that much of Allan's testimony was vague, imprecise, and internally inconsistent.
¶6 Following the hearing, the court denied maintenance to both parties. As to the property division, although the circuit court awarded the bulk of the net assets to Allan, the court awarded significant assets to Sheri. Allan now appeals.
Discussion
¶7 Broadly speaking, Allan makes three arguments. First, Allan contends that the circuit court erred by failing to assign a value to all of the assets that were subject to division. Second, Allan argues that the circuit court erred by treating as divisible some of his assets that were derived from his inheritance. Third, Allan argues that the circuit court engaged in a flawed alternative "hardship" analysis. We address and reject each argument.
A. The Failure to Assign a Value to All Assets Subject to Division
¶8 Allan argues that courts must put a value on "each asset comprising divisible property." Allan's reasoning is that a court cannot sensibly follow or deviate from the presumption of an equal division of property without knowing the value of individual assets and the total value. Using this as his premise, Allan argues that the circuit court erred here because the part of its decision dividing property does not place a value on several assets, such as a residence in Fitchburg and a condominium in Lake Delton.
¶9 We acknowledge that the division of assets does not assign a value to most of the assets awarded to either Allan or Sheri. However, Allan's argument falls short because the circuit court cannot be faulted for failing to assign values to assets when the parties do not provide reliable evidence of the values. It is undisputed that Allan was the party with the greater ability to obtain value information. To the extent that Allan provided such information, the circuit court found his testimony unreliable, a credibility finding that Allan does not and could not reasonably challenge. Moreover, Allan's argument on appeal does not even attempt to detail what he contends is reliable valuation evidence as to the various assets.
¶10 Because Allan had control over the relevant information and failed to provide it, he cannot now complain that the court's determinations were lacking. See Derr v. Derr , 2005 WI App 63, ¶ 66, 280 Wis. 2d 681, 696 N.W.2d 170 (holding that a party's complaint about a "waste" determination in a divorce action "r[ang] hollow" because the same party "had control of all of the information pertinent to the question of waste ... and refused to provide it" (citing Lellman v. Mott , 204 Wis. 2d 166, 175, 554 N.W.2d 525 (Ct. App. 1996) ) ). Our review of the record reveals that the circuit court was handed a mess and did the best that it could to sort that mess out based on the limited information the parties provided.
B. Whether the Circuit Court Properly Determined That All Assets at Issue Were Divisible
¶11 The circuit court determined that all assets should be treated as divisible property because Allan failed to present sufficient evidence tracing current assets to an inheritance that he received during the marriage. Allan argues that this determination was flawed, but his supporting arguments are muddled and difficult to follow. We summarize the applicable law. We then respond to Allan's arguments, as best we understand them.
¶12 The general property division rule is that assets and debts acquired by either party before or during the marriage are divisible upon divorce. Derr , 280 Wis. 2d 681, ¶ 10. Statutory exceptions to the general rule include inherited property and property acquired with funds from inherited property. See id. ; WIS. STAT . § 767.61(2)(a). The determination of whether property is divisible involves fact finding and questions of law. Derr , 280 Wis. 2d 681, ¶ 10.[2] Although a circuit court's decision on how to divide divisible property is discretionary, the determination as to whether to classify property as divisible or non-divisible does not involve an exercise of discretion on the part of the circuit court. We therefore review that determination de novo. See id. , ¶¶ 9-10.
¶13 A party seeking to rely on a statutory exception to the general property division rule bears the burden of showing (1) that the property at issue either always was or can be traced to a non-divisible asset, and (2) that the party had no intent to donate the asset to the marriage. See id. , ¶¶ 11, 14-19, 22-23. Tracing is "the job of determining the value and source of an asset or the value and source of a part of an asset." Id. , ¶ 15. The donative intent inquiry relates to "whether the owning spouse intended to donate non-divisible property to the marriage." Id. , ¶ 23. Pertinent here, if the party asking the circuit court to declare an asset non-divisible does not provide credible evidence that permits the tracing of an identifiable part of the asset to an original non-divisible asset, the court need not reach the issue of donative intent, and the asset is considered divisible. See id. , ¶ 22.
¶14 Allan begins with the apparent assumption that it is enough if he points out that the circuit court did not, in its decision, detail evidence which supported the court's view that Allan failed to provide sufficient evidence of tracing. Specifically, Allan argues that "the court did not make the requisite finding of fact as to the value of the former non-marital property to be included in the divisible marital estate," and that this failure "rings the death knell for the entire property division." We understand Allan to be arguing that, in order for the circuit court to conclude that his inherited assets were commingled with divisible property and thus became divisible property, the court was required to start with factual findings regarding the value of Allan's inherited property.
¶15 This argument fails to come to grips with Allan's burden. A proper tracing argument must start with a demonstration that Allan, the party with the burden of proof, presented evidence that was both sufficient to meet his burden and that the circuit court accepted such evidence as true. Only then could the circuit court even arguably be faulted for failing to make findings regarding the value of assets as they relate to tracing. Allan makes no such demonstration. Instead, Allan turns the burden on its head, starting and ending with his complaint about what the circuit court failed to do. We discuss this argument no further.
¶16 Also in relation to his inheritance and tracing, Allan asserts that two of the circuit court's findings are clearly erroneous. We are not persuaded.
¶17 Allan first asserts that the circuit court's finding that, as to properties listed on his financial disclosure statement, Allan has "provided no proof whatsoever of how those properties were purchased and with what money" is clearly erroneous. In support, Allan points to a portion of the transcript during which the circuit court questioned Allan, apparently about the purchase of some properties listed on his disclosure form. In his answers to the court's questions, Allan asserts that purchase money for the properties came from a JP Morgan Chase account which Allan refers to in his testimony as an "inherited account." This, according to Allan, shows that he provided at least some proof that the properties were purchased with inherited money, thereby rendering the circuit court's finding clearly erroneous.
¶18 The flaw in this argument is twofold. First, it appears to us that the circuit court's reference to "proof" in this context was not a literal reference to all proof. Rather, the reference appears to have been directed at the lack of documentary proof. This reading of the circuit court's statement is supported by the following observations:
• It would have been obvious to the circuit court that Allan did testify that inherited money went into a JP Morgan Chase account and that money from JP Morgan Chase was used to purchase some of the properties. Given the extensive efforts the circuit court made to give Allan the opportunity to address his inheritance and the JP Morgan Chase funds, it is not reasonable to conclude that the circuit court forgot about or ignored Allan's "inherited account" testimony.
• The circuit court expressed frustration with Allan's admitted lack of preparation for the hearing. Indeed, Allan characterized his own financial disclosure statement as "woefully not accurate." Further, Allan appeared to tell the circuit court that he did not prepare because he did not know if he was going to show up for the hearing. Referring to his lack of preparation, Allan stated that he was "really inside out kind of sick and depressed and at times suicidal, and I just-I thought we had an understanding."
• Allan failed to produce documentation relating to JP Morgan Chase accounts and purchases made with funds from such accounts when our review of the record indicates that, plainly, such documentation could have been produced by Allan.
Thus, we conclude that the most reasonable reading of the circuit court's statement is that it is a reference to a lack of documentary proof.
¶19 This argument also fails because the circuit court's statement-that Allan has "provided no proof whatsoever of how those properties were purchased and with what money"-is reasonably read as an accurate reference to the lack of specificity in Allan's testimony about funds held at JP Morgan Chase. For example, Allan gave confusing testimony that seems to say that he "combined" a non-inherited asset that might have been worth "about $110,000" with "the other stuff" at JP Morgan Chase. That is, even Allan did not assert that all of the JP Morgan Chase assets were inherited. In addition, although Allan testified that he used JP Morgan Chase assets to purchase the disputed properties, he never testified that he used JP Morgan Chase assets as his sole source to purchase the properties. Thus, we conclude that the testimony that Allan points to does not conflict with the circuit court's finding because that testimony does not address with specificity all sources of assets used to purchase the properties.
¶20 In sum, Allan has failed to support his assertion that the circuit court's "no proof whatsoever" finding was clearly erroneous.
¶21 Allan's second challenge to the circuit court's findings is directed at the court's finding that "Allan ... provided no proof of what is actually in the JP Morgan account." To refute the court's finding, Allan cites a short exchange between himself and the court, and claims that the court "fail[ed] to put into evidence" a JP Morgan Chase account statement. In the portion of the transcript Allan cites, the court asks a question about two accounts, "the JP Morgan Chase and the IRA," and Allan explains that these accounts are separate IRAs from his inheritance. Then, without reference to the record, Allan faults the court for failing "to put into evidence" a March 31, 2017 JP Morgan Chase account statement that Allan produced.
¶22 It is reasonable to assume that what the circuit court was referring to was the complete lack of proof of the particular breakdown of the source of the assets in Allan's JP Morgan Chase accounts. Allan did not provide clear testimony that the sole source of his assets at JP Morgan Chase was his inheritance. The exchange Allan cites, which references a single JP Morgan Chase account, does not explain what was in all of Allan's JP Morgan Chase accounts. Rather, it discusses one JP Morgan Chase account and an unidentified IRA, and explains that those two accounts are separate. Nor does Allan argue on appeal that the March 2017 account statement showed all of his JP Morgan Chase accounts and all of the sources of these accounts. Moreover, as we have already noted, by Allan's own testimony he had consolidated his inherited funds with at least one non-inherited asset at JP Morgan Chase. Therefore, Allan has not demonstrated that he established the sources of all of his accounts held at JP Morgan Chase.
C. Hardship Analysis
¶23 The circuit court, as an alternative basis for dividing property that included property derived from Allan's inheritance, determined that, even if some portion of the assets at issue were non-divisible, all assets should be treated as divisible due to "hardship" under WIS. STAT. § 767.61(2)(b). According to Allan, the circuit court applied an "erroneous definition of hardship." As we understand Allan's argument, he contends the record demonstrates that the circuit court erroneously believed that a "hardship" analysis involves the consideration of "fairness."[3]
¶24 Allan points to the circuit court's statement: "Even if Allan could prove identity [i.e., tracing] of the funds [in the JP Morgan Chase account and used to purchase various properties], the Court would still include inherited property in the division and divest Allan's property in a fair and equitable manner under sec. 767.61 , Stats." (Emphasis is in Allan's brief.) Allan goes on to cite case law explaining that "hardship" is not determined based on some perceived need to achieve fairness, but instead looks to "privation." See Popp v. Popp , 146 Wis. 2d 778, 792, 432 N.W.2d 600 (Ct. App. 1988) (hardship "rests not upon equitable or fairness principles, but rather ... upon hardship principles.... [T]he party claiming hardship must demonstrate that a failure to include the exempt assets in the marital estate will result in a condition of financial privation or difficulty.").
¶25 Allan's argument hinges on the proposition that the circuit court demonstrated its misunderstanding of "hardship" when the court stated that it would "divest Allan's property in a fair and equitable manner." What Allan apparently fails to understand is that the circuit court was simply repeating the statutory directive. WISCONSIN STAT . § 767.61(2)(b) provides that "[i]f the court makes [a hardship] finding, the court may divest the party of the property in a fair and equitable manner." The circuit court did not indicate that it would look to fairness and equity to determine whether there was a hardship in the first instance. Indeed, as Popp directs, the circuit court went on to consider the parties' "relative financial circumstances ... before and after the divorce." See Popp , 146 Wis. 2d at 792.
¶26 It follows that Allan has failed to demonstrate that the circuit court acted under a misunderstanding of the test for "hardship."
Conclusion
¶27 For the reasons above, we affirm the judgment of the circuit court.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Derr v. Derr , 2005 WI App 63, ¶ 22, 280 Wis. 2d 681, 696 N.W.2d 170, cites to Wis. Stat . § 767.255(2)(a) (2003-04), which was renumbered Wis. Stat . § 767.61(2)(a) in 2005 Wis. Act 443, § 109. No substantive amendments were made to the statutory language relevant in this case.

Allan also briefly asserts that it was "clearly erroneous" to characterize Sheri's credit as being "in ruins." Allan contends that this finding was clearly erroneous because although "[b]oth [Sheri] and Allan had substantial credit card debt, ... neither claimed their credit to be 'in ruins.' " This argument is frivolous. In context, the circuit court's comment is clearly a reference to Sheri's extremely high credit card debt, not her ability to borrow money. Moreover, while we will not specify the amount of credit card debt in this opinion because the amount was submitted under seal, under any reasonable view Sheri's credit card debt was extreme. It would have been reasonable for the circuit court to surmise that, without a hardship finding, the amount of the debt would have been debilitating to Sheri.