COURT OF APPEALS
DECISION
DATED AND FILED

October 30, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP84**

Cir. Ct. No.  2017FA90

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE MARRIAGE OF:


CINDY MARIE LUND F/K/A CINDY MARIE HRDI,

PETITIONER-RESPONDENT,

V.

MICHAEL MATTHEW HRDI,

RESPONDENT-APPELLANT.


APPEAL from a judgment and an order of the circuit court for Ozaukee County:  SANDY A. WILLIAMS, Judge.  *Judgment affirmed in part; reversed in part and cause remanded with directions; order affirmed.*

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Michael M. Hrdi appeals from the judgment of divorce from his former wife Cindy Lund, f/k/a Cindy Hrdi, who petitioned for divorce after a fourteen-year marriage.  The circuit court ordered a fifty-five/forty-five-percent distribution of the marital estate in favor of Cindy and ordered Michael to pay Cindy $37,574.35 as an equalization payment plus $88,567.50, one half of the equity of the home.

¶2    Michael contends the court included assets and debt in the marital estate that should not have been divided.  We agree to the extent the court included the value of the death benefit of one of his life insurance policies.  As we will explain, the court also may have erred in including Cindy's student loan debt.  We disagree with Michael that the court erred in holding him in contempt and ordering him to pay Cindy's associated attorney fees.  We thus affirm in part, reverse in part, and remand with directions.

## A.  Background

¶3    Michael works for the Veterans Health Administration.  He was diagnosed with multiple sclerosis in 2007.  During the divorce, he traded in his former vehicle and purchased a van for $30,590.72.  With an additional $32,135 government grant, the van was converted so that he can drive from his wheelchair.

¶4    Cindy is an assistant professor at Concordia University.  She is pursuing a Ph.D. as a condition of her employment.  A $20,500 student loan was disbursed during the divorce.  She testified that Concordia would reimburse half

the tuition cost for any class in which she received a grade of "B" or higher. The court included the full $20,500 loan in the marital estate.

¶5    Michael testified that property he brought into the marriage included inherited money and two whole-life insurance policies, one from Croatian Catholic Union, the other from Catholic Knights. The Croatian life policy had a cash value of $1,073.80 and a death benefit of $5,627. The Catholic Knights policy had a cash value of $17,484. Both parties testified that they wanted to keep the two policies in force for the children. The court included in Michael's share of the marital estate the cash value of the Catholic Knights policy and the $5,627 death benefit of the Croatian life policy.

¶6    The circuit court found that Michael's net adjusted estate was $189,062.50 and that Cindy's was $120,745.50, for a difference of $68,317. It ordered a 55/45 split in Cindy's favor, for an equalization payment from Michael to Cindy of $37,574.35. It further ordered Michael to refinance the marital home and pay Cindy $88,567.50, her share of the equity, within sixty days of the date of the divorce judgment—by December 7, 2018.

¶7    Post-judgment, Michael's counsel, Attorney Linda Ivanovic, advised the court that it had erred by adding the Croatian life policy death benefit to the marital estate. The court denied the Order Correcting Decision without a hearing.

¶8    On December 5, 2018, Attorney Ivanovic advised the court that, while the closing on the marital residence would proceed on December 7, the funds would not be paid that day because, under the Truth in Lending Act, funds are not distributed until three days after closing and Cindy thus would receive her equalization payment the week of December 10. When Cindy went to Attorney Ivanovic's office on December 7, she was informed that the closing would not

3

take place.  Cindy moved for contempt.  The court granted the motion and awarded her $3,996.92 in attorney fees and interest.  Michael appeals.

## B.  Croatian Life Policy Death Benefit

¶9      Michael first contends the circuit court erred in including the value of the death benefit of the Croatian life policy in the marital estate because it is payable only upon death.

¶10     We have not located a Wisconsin case expressly holding that for purposes of property division upon divorce, life insurance policies are to be valued at their cash surrender values, not the amount of the death benefit.  Other jurisdictions have so ruled, however.  *See, e.g.*, ***Wisner v. Wisner***, 631 P.2d 115, 120 (Ariz. Ct. App. 1981); ***Peddycord v. Peddycord***, 479 N.E.2d 615, 617 (Ind. Ct. App. 1985); ***Bishop v. Eckhard***, 607 S.W.2d 716, 717-18 (Mo. Ct. App. 1980); ***Fox v. Fox***, 626 N.W.2d 660, ¶18 (N.D. 2001).

¶11     But it makes logical sense.  The owner's interests in a life insurance policy include changing beneficiaries and the power to surrender the policy *for its cash value*.  ***Bersch v. VanKleeck***, 112 Wis. 2d 594, 596-97, 334 N.W.2d 114 (1983).  Also, the marital estate usually is valued as of the date of divorce.  ***Schinner v. Schinner***, 143 Wis. 2d 81, 98, 420 N.W.2d 381 (Ct. App. 1988).  It makes little sense to include a payable-on-death benefit in current assets if only the cash value is available to the policy owner on the date of divorce.  As the death benefit is something Michael never can realize, we conclude that the circuit court erred in including it in the marital estate.

¶12     Property division is within the circuit court's discretion.  ***Schinner***, 143 Wis. 2d at 97.  A court misuses its discretion when it makes a mistake of fact

or an error of computation. ***Van Wyk v. Van Wyk***, 86 Wis. 2d 100, 108, 271 N.W.2d 860 (1978); ***Dean v. Dean***, 87 Wis. 2d 854, 877, 275 N.W.2d 902 (1979).

¶13 Had the court excluded the death benefit altogether, Michael's net adjusted estate would have been $183,815.50, a difference between his and Cindy's of $63,070, for an equalization payment to Cindy of $34,688.50—$2,885.85 less than he was ordered to pay. Alternatively, had the court included only the policy's cash value, Michael would have had a net adjusted estate of $184,887.30, a difference between his and Cindy's of $64,141.80. Under that scenario, his equalization payment to Cindy would have been $35,277.99—$2,296.36 less than he was ordered to pay.

¶14 We will not reverse a circuit court's decision if the difference would be *de minimis*. ***Laribee v. Laribee***, 138 Wis. 2d 46, 51, 405 N.W.2d 679 (Ct. App. 1987). In ***Laribee***, the court found *de minimis* a dispute over $640 mistakenly included in a $192,000 marital estate. ***Id.*** Cindy argues the differential is *de minimis* in relation to their over-$300,000 marital estate. Few published cases make clear what *de minimis* means in the context of property division. We cannot say, however, that the error here, nearly $2,300, is *de minimis*.

¶15 Case law teaches that errors of computation equate to a misuse of discretion. We conclude the court erroneously exercised its discretion in regard to the Croatian life policy death benefit. Further, the court's error here was brought to its attention yet it refused to rectify it or explain its stance. The remedy for a computation or mathematical error generally is a remand with directions for the circuit court to recompute the valuation. *See* ***Schinner***, 143 Wis. 2d at 86, 107; ***Vander Perren v. Vander Perren***, 105 Wis. 2d 219, 230, 313 N.W.2d 813 (1982).

### C. Government Grant for Van Conversion

¶16    The court added the $32,135 grant for the van conversion to the marital estate when it valued Michael's van at $60,000.  Michael argues that, as the sole reason for the grant was to allow him to more safely and independently accommodate his physical impairment, he alone is entitled to it.  He also points out there was no diminishment of the marital estate to pay for the van conversion.

¶17    Michael contends the grant is analogous to a gift.  A gift from a person other than the other party is not subject to property division.  WIS. STAT. § 767.61(2)(a)1. (2017-18).[1]  He also likens it to a personal injury award, which is meant to compensate for the loss of a healthy body.  *See* ***Richardson v. Richardson***, 139 Wis. 2d 778, 785-86, 407 N.W.2d 231 (1987).  He contends that just as an injured party is entitled to full compensation for pain, suffering, bodily injury, and future earnings, the presumption should be that each spouse is entitled to leave the marriage with whatever compensates for a healthy body.  *See **id.***

¶18    "[T]he valuation of marital assets is a finding of fact."  ***Liddle v. Liddle***, 140 Wis. 2d 132, 136, 410 N.W.2d 196 (Ct. App. 1987).  We uphold a circuit court's findings of fact unless they are clearly erroneous.  ***Id.***  "The general rule is that assets and debts acquired by either party before or during the marriage are divisible upon divorce."  ***Derr v. Derr***, 2005 WI App 63, ¶10, 280 Wis. 2d 681, 696 N.W.2d 170.  Although a circuit court's decision on *how* to divide divisible property is discretionary, we review de novo the determination as to *whether* to classify property as divisible or non-divisible.  *See **id.***, ¶¶9-10.

---

[1]  All references to the Wisconsin Statutes are to the 2017-18 version unless noted.

¶19    The court found that Michael's newly purchased converted van was worth $60,000 and awarded him the $29,404 equity in it. It awarded Cindy her 2005 vehicle, which was valued at $2,400. The court found that Cindy's car has 180,000 miles on it, that "[t]he older and the more miles on a car, the more expensive your maintenance is going to be," and that she was the one driving the children around. As Cindy points out, if Michael decides he no longer wants to keep his van, he can sell it for a price that reflects the value of the improvement. The court's findings are not clearly erroneous and we see no error in classifying the enhanced value of the van as divisible property.

### D. Cindy's Educational Loan

¶20    Michael next asserts that including Cindy's $20,500 student loan in the marital estate was error because Cindy testified that she incurred the debt during the divorce. The record is less than clear. If she applied for the loan after filing the action, he is correct.

¶21    Cindy filed for divorce on April 3, 2017. A stipulation and temporary order filed on September 20, 2017, ordered that both parties "are to be restrained from making any further debts against the opposing party's credit with each party being responsible for their own debts as of the date of filing this action." The ensuing trial colloquy between Cindy and Attorney Ivanovic addresses Cindy's loan application.

> Q    Okay. Now, Miss Hrdi, after this financial disclosure was filed you ended up entering into a temporary stipulation and order, correct?
>
> A    Yes.
>
> Q    Okay. I'm going to hand you Exhibit No. 19 [stipulation for temporary order]. Does that look familiar to you?

7

A    Yes.

Q    And did you sign at page four, looks like, of that document?

A    Yes, I did.

Q    Okay.  Now, this order was entered by the Court, the first page it looks like it was filed September 20th of 2017, correct?

A    Yes.

Q    And it looks like the Court approved this order on September 20th of 2017….  Do you see that?

A    I don't see it.  Oh, yes, ma'am.

Q    Now, I'm going to refer you to page three of this document.  Now, under paragraph eight, could you just read that into the record, please?

A    "Both parties are to be restrained from making any further debts against the opposing party's credit with[] [each party] being responsible for paying their own debts as of the date of … the filing of this action."

Q    Okay.  So under this provision you were not supposed to make any debts against your husband's credit, correct?

A    Correct.

Q    And in addition, it indicates that each party would be responsible for their own debts as of the date of filing of this document as of the date of the filing of divorce, correct?

A    Yes.

Q    Okay.  Now, your student loan that you have included in your Exhibit No. 40 balance sheet, that was incurred after this, correct?

….

A    So I applied for that and received it to pay tuition end of August or September of 2017.

Q    Do you recall the date that you received that disbursement?

A    I don't recall the exact date.

….

Q    I am going to hand you what I just marked as our 20. Is that a printout regarding your student loan?

A    Yes.

Q    And on disbursements do you see that on the left end of that document, what does it indicate as far as your disbursement date?

A    November 2nd.

Q    Of what year?

A    2017.

Q    Okay. So that would be a loan that was taken out after the temporary order?

A    Application was prior to, but the disbursement was after.

¶22    When the parties made their final arguments, Michael's counsel argued that Cindy's student loan did not exist at the time of the September 20, 2017 temporary-order hearing because it was not on her financials, and thus was a new debt. This colloquy followed:

> THE COURT: But what about the testimony that she actually had applied for it, it was just the disbursement that came after the divorce was filed.
>
> MS. IVANOVIC: Well[,] the problem I have with that is she went into the temporary hearing and did not have that listed and then she never talked to Mr. Hrdi about it. She testified that her parents had been helping her out all of these years and now all of a sudden she incurred a loan after the temporary order that was never disclosed.
>
> THE COURT: Well, the [student-loan] application all occurred before.

9

….

MS. IVANOVIC: If Mr. Hrdi had gone out and bought a car a week before the hearing and filled out an application, came into the hearing, didn't have –

THE COURT: Wait, wait. Before the hearing?

MS. IVANOVIC: Yeah.

THE COURT: This was before the action was filed.

MS. IVANOVIC: I don't know that it was.

THE COURT: Am I wrong in what I remember from the testimony, Ms. La Fleur [Cindy's counsel]?

MS. LA FLEUR: No.

MS. IVANOVIC: It looks like it [divorce action] was filed April of 2017. I don't think there is one bit of evidence that shows that that student loan was applied for[—]when it was applied for. I think the only document filed in this Court was the date of disbursement. I don't believe Ms. Hrdi provided any information whatsoever other than her testimony.

THE COURT: The testimony is all we've got.

MS. IVANOVIC: Well, what we have in this exhibit is a statement that says the disbursement was made after the temporary hearing.

THE COURT: Right and she acknowledged that, but she also testified that she had applied for that before the divorce was filed.

….

MS. IVANOVIC: So, Your Honor, I'm just going to quickly pull my exhibit. I think this is an important issue. I'm really concerned that Ms. Hrdi applied for a loan, didn't tell anyone, comes into the temporary hearing, we enter this order, everybody pays their own new debts, and all of a sudden three months later this $20,000 loan pops up. I don't think it's fair that Mr. Hrdi be responsible for something he didn't know about, they didn't talk about, that never occurred in the past, and he is not benefitting from.

¶23 It is not clear to this court that Cindy made her student loan application before filing the divorce action. The context of her testimony suggests only that she applied for it before the temporary order. On remand, we direct the circuit court to revisit this issue. If Cindy's loan application was made after the divorce action was filed, the loan debt is Cindy's alone and the court shall factor it into the equalization payment recomputation.

### E. Unequal Property Division

¶24 The circuit court awarded Cindy fifty-five percent of the marital estate. Michael contends the court erroneously exercised its discretion because it made the unequal award without properly considering the statutory factors and failed to give weight to his multiple sclerosis.

¶25 While equal division is presumed, a court may deviate from this presumption after considering twelve statutory factors, plus a catch-all "other factors as the court may in each individual case determine to be relevant." WIS. STAT. § 767.61(3); *Derr*, 280 Wis. 2d 681, ¶9. Property division determinations are entrusted to the discretion of the circuit court and are not disturbed on review unless there has been an erroneous exercise of discretion. *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. A discretionary decision is upheld as long as the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* (citation omitted). We search the record for reasons to sustain a discretionary decision. *State v. Thiel*, 2004 WI App 225, ¶26, 277 Wis. 2d 698, 691 N.W.2d 388.

¶26 While the court did not expressly tick through each of the statutory factors, the parties did. The court considered the following about the fourteen-

11

year marriage: Cindy has credit card debt, a student loan, and owes her parents $54,113 for loans made to her during the pendency of the divorce; Cindy pays the children's health insurance premiums; Michael was able to save for retirement during the marriage but Cindy was not; Cindy would not be able to purchase a home similar in quality to the marital residence, awarded to Michael, the value of which would only increase; Cindy bore the Parent Coordinator costs, which escalated due, in large part, to Michael's obstruction; Cindy has full-time placement of the children plus all of their variable expenses and driving responsibilities; Cindy must pay Michael maintenance for six years; and Michael has access to over $101,000 in inheritance monies which were not included in the marital estate.  In addition, ample evidence of his medical condition was presented, including that he works full time, his employer has been "very accommodating," and his converted van permits him to drive.  While he testified that the stress of the divorce has worsened his symptoms and his health may decline in the future such that he may have to apply for disability, he produced no medical records or expert testimony regarding his health, prognosis, or continued ability to work.

¶27     We are satisfied that the court properly considered the statutory factors and explained its rationale for the unequal property division.  Michael has not shown that the court erroneously exercised its discretion.

### F.  Contempt

¶28     Finally, Michael contends the court erred in holding him in contempt and ordering him to pay Cindy's associated attorney fees.

¶29     "A person may be held in contempt if he or she refuses to abide by an order made by a competent court."  ***Krieman v. Goldberg***, 214 Wis. 2d 163,

169, 571 N.W.2d 425 (Ct. App. 1997). A finding of contempt rests on the circuit court's factual findings regarding the person's ability to comply with the order. *See **Balaam v. Balaam***, 52 Wis. 2d 20, 29, 187 N.W.2d 867 (1971). The burden of proof is on the person against whom contempt is charged to show his or her conduct was not contemptuous. ***Id.*** at 30.

¶30 We review a circuit court's use of its contempt power to determine whether the court properly exercised its discretion. ***Krieman***, 214 Wis. 2d at 169. Findings of fact and conclusions of law may underlie discretionary determinations. ***Monicken v. Monicken***, 226 Wis. 2d 119, 125, 593 N.W.2d 509 (Ct. App. 1999). A circuit court's finding that a person is in contempt of court will not be reversed unless the finding is clearly erroneous. ***State v. Rose***, 171 Wis. 2d 617, 623, 492 N.W.2d 350 (Ct. App. 1992). Whether the circuit court adhered to the proper procedures in exercising its contempt powers is a question of law we review independently. ***Evans v. Luebke***, 2003 WI App 207, ¶16, 267 Wis. 2d 596, 671 N.W.2d 304.

¶31 The parties' divorce was effective October 8, 2018.[2] To provide a cash settlement to Cindy to facilitate the closing on her new house, Michael had to refinance and close on the marital residence, which the court ordered be done within sixty days, by December 7. To avoid potentially serious penalties, including losing the house on which she had put an offer, Cindy had to have proof of financing by December 7. The closing did not occur by that date.

---

[2] The judgment of divorce was filed on October 23, 2018.

13

¶32     Michael represented to the court in June 2018 that he had the funds to pay Cindy her share of the equity and testified at trial on September 24, 2018, that he already had talked to three lenders regarding refinancing and anticipated he could have it completed within sixty days.  He later contended, however, that he first learned when he sought refinancing that there were four judgments on the house from the prior owner, which slowed the process, turning it into "a nightmare."  He did not corroborate that assertion by producing a witness from any lender or title company to testify that there was a problem with obtaining clear title or closing on time.  Further, even if he did not have the ability to remove Cindy's name from the mortgage by December 7, he had claimed six months earlier that he had funds available.

¶33     Unpersuaded by Michael's contention that his actions were not intentional, the court found him in contempt.  It found "self-serving" his statements that he "did everything [he] could" to timely effectuate the closing, as he failed to provide testimonial or documentary evidence of when he applied for refinancing with different lenders or of the efforts he said he made to comply with the court's order.  The court ordered that he pay Cindy's attorney fees, limiting them to those directly related to the closing on the marital residence.  Attorney fees incurred in pursuing a contempt of court order are recoverable under WIS. STAT. § 785.04(1)(a) as a remedial sanction.  ***Benn v. Benn***, 230 Wis. 2d 301, 315, 602 N.W.2d 65 (Ct. App. 1999).

¶34     The court's findings of fact are not clearly erroneous and we see no erroneous exercise of discretion.

## G. Conclusion

¶35    In sum, we affirm the judgment to the extent of the court's valuation of Michael's converted van, its award to Cindy of fifty-five percent of the marital estate, and its holding Michael in contempt and ordering that he pay Cindy's associated attorney fees plus interest.

¶36    We reverse the judgment in regard to the court's inclusion in the marital estate of the Croatian life policy death benefit.  The court made the decision to include the policy in the marital estate, and we presume the court intended to similarly treat both life insurance policies by including the cash value of each.  On remand, the court shall exclude the full death benefit of the Croatian life policy and include only its cash value.

¶37    Also on remand, the court shall determine when Cindy applied for her student loan.  If Cindy made her application after the divorce action was filed, the loan shall be assigned solely to her.  After adjusting for the Croatian life policy and, if necessary, for Cindy's student loan, the court then shall recompute the equalization payment Michael must pay to Cindy.

     *By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions; order affirmed.

     This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)5.

15